THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD COOPER, Defendant-Appellant.

First District (3rd Division)   No. 81—2171

Opinion filed August 28, 1985.

518

Stanley L. Hill & Associates, of Chicago (Stanley L. Hill, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Paula Carstensen, and James F. Sullivan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGILLICUDDY delivered the opinion of the court:

The defendant, Edward Cooper, was charged by information with attempted murder, aggravated battery and armed violence. On January 9, 1981, defendant's first trial ended in a mistrial based on a deadlocked jury. Following a second jury trial, defendant was convicted of aggravated battery and sentenced to an extended term of nine years. The defendant contends on appeal that (1) the trial court erred in not granting his motion for a mistrial based on a comment by the prosecutor on the defendant's failure to testify; (2) the trial court erred in allowing the prosecutor to indicate to the jury that the defendant had filed a motion to exclude his palm prints from evidence; (3) the trial court erred in denying the defendant's motion to dismiss the information based on the constitutional prohibition against double jeopardy; (4) the trial court improperly indicated to the jury favoritism to the prosecution; (5) the trial court erred in denying defense counsel's request to impeach the victim by demonstrating that she adjusted her testimony in the second trial based on defense counsel's attack of her credibility during closing argument in the first trial; and (6) the statute under which he was sentenced, section 5—5—3(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(2)), is unconstitutionally vague.

At trial, the victim, Vanessa Cooper, testified that she was married to the defendant for 13 years until their December 1980 divorce. They resided in a house at 8945 South Wallace Street, Chicago. In October 1979, the victim visited the defendant in a hospital, where he

was recovering from an accident. She told him she wanted a divorce. A few days later, the defendant telephoned her and said he was being released from the hospital. He asked her to accompany him on a weekend trip to Michigan to work on a friend's car. When she refused, the defendant told her he was going anyway.

On the following Tuesday, October 23, 1979, the defendant phoned the victim. She had not seen him since her hospital visit. She told him that their three children were going to the circus and she was going roller skating. The children went out at 6:30 p.m. At about 8:50 p.m., the victim left the house through the basement door, leaving it unlocked. The front and back doors to the house were locked. She walked to the garage and tried to open the overhead door with her automatic opener. Although it had worked earlier that day, the door would not open. She unlocked the padlock and door lock at the service door and entered the garage. Since it was dark inside, the victim flipped the light switch on the wall. It had worked properly a few days earlier, but the light did not go on. Light from the garage next door and the alley light shone into her garage through the door and a window. She was able to see various objects in the garage.

As the victim stepped into the garage, she was hit twice on the back of the head with a heavy object. The blows knocked off her eyeglasses and broke some of her teeth. The victim, who was nearsighted, turned around, saw the defendant, and hollered, "Ed." As the defendant came toward her, she grabbed his hand. He was holding a hammer or bat. A scuffle ensued, with the victim falling on the car. They tumbled to the floor. She screamed; the defendant pleaded with her to be quiet and said he was sorry. She stood up, declared that she was going for help, and ordered the defendant to pick up her glasses.

The defendant followed her through the basement door into the house, carrying her glasses. She switched on two lights and started to telephone her parents. The defendant snatched the phone from her hand. He told her to go upstairs, saying that he would go get help. He returned and shot the victim in the left shoulder. An argument ensued, during which he shot her in the left breast. Neither shot knocked her down. She repeatedly asked the defendant what was wrong with him. She then began to get dizzy and asked if he was going to help her. He told her that he would get help only if she went upstairs. She crawled to the top of the stairs and fainted. She woke up in Cook County Hospital in November 1979.

The victim testified that, as a result of the incident, she suffered a broken finger, a broken jaw, and lost teeth; she had a speech impediment and did not yet have full use of her left arm. She underwent

nine operations as a consequence of her injuries. Nothing was taken from her home or her person.

David Dioguardi, a detective with the Chicago police department, testified that on October 23, 1979, he examined the doors and locks on the Coopers' house and garage and found of sign of forced entry. Officer Dioguardi later arrested the defendant at the home of his sister.

James Dunbar of the Chicago police department, assigned to the crime laboratory mobile unit, testified that on the night of October 23, 1979, he examined the car in the Cooper garage, and found blood on its side and palm prints on its hood. He saw no blood prints or blood-smudged prints. Officer Dunbar recovered two bullets in the house on the basement floor.

The jury returned a guilty verdict of aggravated battery against the defendant. The defendant appeals.

■■ ■ The defendant first contends that the trial court erred in not granting his motion for a mistrial based on the prosecutor's comment on the defendant's failure to testify. The allegedly improper remark by the prosecutor occurred during defense counsel's closing argument:

> "[DEFENSE COUNSEL]; *** [The police] asked [the defendant] to account for the week of October 22nd. And he begins doing that. He told Dioguardi he was with Dock on Tuesday morning in Indiana to help with the car. *** What else does he say, ladies and gentlemen. He also says, 'Yeah, I've been going to the Triester Clinic. Was she injured while I was at the clinic because I was at the clinic too.'

> [PROSECUTOR]: Objection. No testimony of Officer Gioguardi saying that.

> [DEFENSE COUNSEL]: Well, strike that. I stand corrected. Cooper told Officer Dioguardi that.

> [PROSECUTOR]: Objection. No testimony as to that either. The defendant didn't testify, we know that.

> [DEFENSE COUNSEL]: Judge, objection to that comment.

> THE COURT: The objection will be sustained. It will be stricken and I'll instruct you not to do something like that again, Mr. [Prosecutor].

> All right, the objection is overruled. Proceed with your argument."

A prosecutor may not comment on a defendant's failure to testify because to do so would violate the self-incrimination clause of the fifth amendment. (*Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d

106, 85 S. Ct. 1229.) The test for determining whether a defendant's right to remain silent has been violated is whether the reference was intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify. (*People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180.) Expressed another way, the test of whether the comment was aimed at highlighting defendant's failure to testify is simply this: has the prosecutor suggested to the jury that its attention should be focused on the defendant's failure to take the stand? (*People v. Thomas* (1980), 89 Ill. App. 3d 592, 411 N.E.2d 1076.) Where motivated by a purpose of demonstrating the absence of any evidentiary basis for defense counsel's argument rather than a purpose of calling attention to the fact that defendant had not testified, such comment is permissible. (*People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180; *People v. Jones* (1970), 47 Ill. 2d 66, 264 N.E.2d 189.) Moreover, a defendant cannot ordinarily claim error where the prosecutor's remarks are in reply to and may be said to have been invited by defense counsel's argument. *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180; *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671.

■ In the instant case, the prosecutor's comment regarding the failure of the defendant to testify was made in response to defense counsel's statement relating something that the defendant had said to Officer Dioguardi. Since Officer Dioguardi had not so testified, and the defendant had not testified at all, defense counsel was speaking of something not in evidence. The prosecutor responded with an objection and the complained-of remark. There is no indication that this response was intended or calculated to direct the jury's attention to the defendant's failure to testify; rather, it is apparent that the prosecutor was pointing out the lack of any evidence to support defense counsel's argument. As the comment was in reply to and invited by defense counsel's argument, the defendant cannot claim error. Furthermore, the trial court sustained defense counsel's objection to the remark and ordered it stricken. The defendant also complains that the impact of the prosecutor's comment was exacerbated by the trial court's "inadvertently [overruling] the objection, intending to sustain it." From our reading of the record, it appears that the trial court sustained defense counsel's objection, admonished the prosecutor, and then overruled the prosecutor's objection. The trial court properly denied defendant's motion for a mistrial based on the State's comment on the defendant's failure to testify.

■ The defendant next argues that the trial court erred in allowing the prosecutor to "blatently [*sic*] misrepresent" to the jury that

the defense had filed a motion to exclude palm prints from evidence. On the first day of trial, the State made a motion to order the taking of the defendant's palm prints. Defense counsel complained that while the State had a right to obtain the prints, its request was untimely as it was made on the first day of trial, and he would need the opportunity prior to trial to examine the prints. The trial judge denied the motion, indicating that he would have granted it only if the State had agreed to a continuance. This topic was addressed during defense counsel's closing argument:

"[DEFENSE COUNSEL]: He found a palmprint that was on the hood of the car as the picture will indicate, right here near the antenna. Right here, that palmprint where it was recovered. Wouldn't you like to know whether or not that palmprint—

[PROSECUTOR]: Objection. Counsel knows why I'm objecting.

[DEFENSE COUNSEL]: I don't know.

THE COURT: You can make a statement.

[PROSECUTOR]: Because he had a motion to exclude palmprints on this case.

[DEFENSE COUNSEL]: Your Honor, I should be allowed to respond to that.

THE COURT: No, ***. The State made a request to have your client take palmprints. You objected to it and it wasn't done. So, continue with your argument.

[DEFENSE COUNSEL]: Let's go from that, ladies and gentlemen.

THE COURT: Objection will be sustained.

[DEFENSE COUNSEL]: Let's go to that, ladies and gentlemen. Since the motion is brought out, the State requested to bring in a palmprint, have Mr. Cooper make a palmprint the day we started picking the jury in this case. We had already been through one trial. No palmprint had been used. An issue was made out of it.

[PROSECUTOR]: Objection.

[DEFENSE COUNSEL]: They never dealt with it. I think I have a right to explain it.

THE COURT: You may explain. Overruled.

[DEFENSE COUNSEL]: And the Court sustained my motion, denying them the right to take the palmprint."

In his rebuttal argument, the prosecutor responded:

"[PROSECUTOR]: What about the fingerprints in this case.

As I said, if ther [*sic*] were blood-smudged prints, that would be extremely relevant. But there were none. But there were fingerprints. On a car is it unusual. He gets up and says where were his palmprints when he makes a motion so we can't even bring in the palmprints. That motion was allowed on a procedural ground.

[DEFENSE COUNSEL]: Objection. The State brought that motion and you denied that motion.

THE COURT: Objection is overruled. This is proper comment based upon comments made by the defense. You may proceed, * * *."

The defendant's motion for a mistrial based on the State's comments was denied. We cannot say that the trial court abused its discretion in so doing. Defense counsel's own statements contributed to any confusion as to whose motion resulted in the exclusion of palmprints from the evidence. Moreover, Officer Dunbar testified that the palm prints were blood-free. Therefore, evidence that they were made by the defendant would have had little significance, as the car was in the defendant's garage, and the prints could have been made at any time. The trial court made no error in this regard.

■ The defendant next contends that the trial court erred in denying his motion to dismiss the information. He bases this argument on his contention that the trial court abused its discretion in declaring a mistrial after the initial trial and that, therefore, he was being charged a second time in violation of the constitutional prohibition against double jeopardy. However, where a trial court, in the absence of an abuse of discretion, discharges a jury because of its failure to reach a verdict, the constitutional prohibition against double jeopardy does not bar a new trial. *People v. Bean* (1976), 64 Ill. 2d 123, 355 N.E.2d 17; *People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432.

On January 8, 1981, following closing arguments in the first trial, the jury began its deliberations at about 2:40 p.m. Later, the jury sent a question to the trial judge regarding the length of time defendant spent at his residence on Wallace Street prior to the incident. The trial judge told the members of the jury to reconstruct the testimony from their memories. At 11 p.m., the jury was brought into the courtroom and the following colloquy occurred:

"THE COURT: I just called you out here to let you know we are still here and we certainly are willing to wait for as long as it takes to reach a verdict. I have no plans to send you anyplace else. We are going to remain here.

Mr. Foreman, You believe if you have more time you can

reach a verdict in this case, or do you want to go back and discuss it?

THE FOREMAN: I would like to discuss it with the jurors.

THE COURT: In other words I won't even ask you to come back out and answer the question. I will ask you to come out and keep trying.

THE FOREMAN: If I go back and get an answer, can I come back?

THE COURT: If you wish. I will wait a little while."

The jury left the courtroom to resume deliberation.

At 11:33 p.m., the jury returned to the courtroom.

"THE COURT: Mr. [Foreman], what did you wish to tell me?

THE FOREMAN: Your Honor, we cannot reach a verdict.

THE COURT: You feel you are hopelessly deadlocked?

THE FOREMAN: Yes, Your Honor.

THE COURT: If I were to send you out overnight and have you come back tomorrow, you think you would have a better chance of reaching a verdict?

THE FOREMAN: We don't feel we can reach a verdict.

THE COURT: All right. Let me do this then. I am going to give you one more instruction and ask you to deliberate a little while longer."

The court proceeded to give the jurors the *Prim* instruction (see *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731), adding that a mistrial would be considered if they were unable to reach a verdict within a reasonable period of time. Again, the jury retired for further deliberation.

At 12:05 a.m., the trial judge announced that he was contemplating bringing out the jurors and, if they were hopelessly deadlocked, declaring a mistrial. Defense counsel objected, arguing that the impact of the *Prim* instruction had been lessened by the trial court's comment about considering a mistrial. The defense attorney urged the court to bring the jury back the following day to resume deliberations. The trial judge replied, "I think there's a limit you can require human beings to sacrifice in order to come to a verdict. I will bring them out. If the foreman tells me they are hopelessly deadlock [*sic*] I will declare a mistrial." The jury was brought back into the courtroom. The following conversation took place:

"THE COURT: Mr. Foreman, do you wish to make any observation to me at this time?

THE FOREMAN: Your Honor, the jury, jurors have not

been able to reach a verdict and feel we will not be able to reach a verdict.

THE COURT: You believe that you are hopelessly deadlock [*sic*]?

THE FOREMAN: I do, Your Honor.

THE COURT: And even if we gave you more time you would not reach a verdict?

THE FOREMAN: I don't feel we would reach a verdict with more time, Your Honor."

After polling the jurors as to whether, given more time, they could reach a verdict, the court declared a mistrial.

■■ Under these circumstances, we cannot say that the trial court acted improperly. After deliberating with the other jurors for almost nine hours, the foreman informed the trial court that they were hopelessly deadlocked. Following the *Prim* instruction, less than an hour later, the foreman repeated that they were hopelessly deadlocked. The jurors were individually polled, each responding negatively to the question whether he felt that, given more time, they could reach a verdict. There is nothing in the record to indicate that the declaration of a mistrial constituted an abuse of discretion.

In support of his position, the defendant relies solely on *People v. Touhy* (1935), 361 Ill. 332, 197 N.E. 849. In *Touhy*, the supreme court held that a jury in a criminal case may be discharged without a verdict whenever in the court's opinion there is manifest necessity for the discharge or the ends of public justice require it. The court further ruled that the exercise of that authority is within the sound discretion of the trial court and is not reviewable in the absence of abuse. The *Touhy* court found there was no abuse of discretion in declaring a mistrial after the jury had deliberated for 25 hours.

■■ The defendant reasons that, in the instant case, dismissing the jury after nine hours constituted a clear abuse of discretion. On the contrary, dismissing a jury after less than nine hours has been held not to be an abuse of the trial court's discretion. (*People v. Bean* (1976), 64 Ill. 2d 123, 355 N.E.2d 17 (seven hours 20 minutes); *People v. Mays* (1962), 23 Ill. 2d 520, 179 N.E.2d 654 (four hours); *People v. DeFrates* (1946), 395 Ill. 439, 70 N.E.2d 591 (45 minutes).) In determining how long a jury should be permitted to deliberate before a mistrial is declared and the jury is discharged, no fixed time can be prescribed, and great latitude must be accorded the trial court in the exercise of its informed discretion. (*People v. Preston* (1979), 76 Ill. 2d 274, 391 N.E.2d 359.) The trial court did not abuse its discretion in declaring a mistrial. Reprosecution of the defendant, therefore, was

not barred, and the trial court properly denied the defendant's motion to dismiss the information.

■ The defendant next argues that the trial court "clearly [indicated] its favoritism of the prosecution to the jury," thereby denying him a fair trial. The defendant points to the trial court's declaration of a mistrial at the first trial, the trial court's denial of his motion for substitution of judges for the second trial, and various comments on evidentiary rulings by the trial court during the second trial. The record does not indicate that the jury was aware of the mistrial; in fact, prior to the second trial, the State's motion *in limine* to exclude evidence of the result of the first trial was granted. The trial court's denial of the defendant's motion for substitution of judges occurred prior to *voir dire*, and the record does not indicate that the jury was informed of such denial.

■ Regarding comments by the trial court, there is a high duty imposed on the court to avoid giving any impression to the jury that would in any way influence their verdict. (*People v. Walinsky* (1921), 300 Ill. 92, 132 N.E. 757; *People v. Smalley* (1973), 10 Ill. App. 3d 416, 294 N.E.2d 305.) After giving careful consideration to each point raised by the defendant, we find that the record fails to establish that the trial court exceeded the bounds of propriety in making its rulings. The trial court did not indicate to the jury any favoritism to the prosecutor, and the defendant was not deprived of a fair trial.

■ The defendant also contends that the trial court erred in denying defense counsel's request to impeach the victim during cross-examination by demonstrating that she adjusted her testimony in the second trial based on defense counsel's attack of her credibility during his closing argument in the first trial. Although the defense is entitled to reasonably broad cross-examination for purposes of impeachment or discrediting the testimony of a witness, the extent of cross-examination with respect to an appropriate subject of inquiry rests in the sound discretion of the trial judge, and it is only where an abuse of discretion occurs, resulting in manifest prejudice, that a court of review will reverse. *People v. Richard* (1980), 90 Ill. App. 3d 322, 413 N.E.2d 5.

During cross-examination, the victim testified that she turned on the lights upon entering the basement. Defense counsel then read a portion of the transcript from the original trial in which she had testified that the basement lights were on when she left the house. The State objected and the trial court sustained the objection. At defense counsel's request, a side bar conference was held. Defense counsel asserted that the victim was changing her testimony based on the clos-

ing arguments she heard during the first trial. He argued that the defense had a right to show why she changed her testimony. The trial court responded that what the defense attorney said in closing argument was not admissible, and that the defense could not ask any questions about what had been said during closing arguments. The trial court further instructed defense counsel to refrain from any reference to the first trial other than using the transcript for impeachment where appropriate. This was a proper exercise of the trial court's discretion.

■■ Finally, the defendant urges that the statute under which he was sentenced is unconstitutionally vague and that, therefore, his sentence should be vacated. The statute in question allows imposition of an extended term of not less than five and not more than 10 years for aggravated battery upon a finding that the offense was accompanied by "exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—8—2(a)(5), 1005—5—3.2(b)(2).) This vagueness argument has been addressed in *People v. Sanford* (1983), 116 Ill. App. 3d 834, 452 N.E.2d 710, *People v. Kulpa* (1981), 102 Ill. App. 3d 571, 430 N.E.2d 164, and *People v. Turner* (1981), 93 Ill. App. 3d 61, 416 N.E.2d 1149. These cases have held that the words of the statute provide adequate guidelines to enable the sentencing court to base the imposition of an extended term on articulable circumstances surrounding the offense. We find that section 5—5—3(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(2)) is not unconstitutionally vague.

For the foregoing reasons, the judgment order of the circuit court of Cook County is affirmed.

Affirmed.

WHITE, P.J., and McNAMARA, J., concur.