THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID ALDACO, Defendant-Appellant.

First District (5th Division)    No. 80-2768

Opinion filed June 25, 1982.

James J. Doherty, Public Defender, of Chicago (Timothy Kosnoff and John Lanahan, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Ruth Stern Geis, and Paula Carstensen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was found guilty of attempt armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 8—4) and was sentenced to a term of eight years in the Illinois Department of Corrections. He appeals, contending that (1) the trial court erred by admitting a transcript of the victim's preliminary hearing testimony in that the State failed to exercise due diligence in procuring the victim's attendance at trial, and (2) he was denied a fair trial by the trial court's failure to ask prospective jurors questions during *voir dire* sufficient to allow him to intelligently exercise his peremptory challenges.

The following pertinent evidence was adduced at trial.

Chicago police officers James Molloy and John Farrell both testified for the State that they were assigned to a plainclothes Tactical Unit of the Chicago Police Department on May 28, 1978. Shortly after midnight, they were patrolling westbound on 18th Street near 18th and Racine, in Chi-

cago, Illinois, when they observed three Latino men standing on the sidewalk in a well-lighted area. The three men were identified as the defendant, a shorter companion, and the victim, Salvador Razo.

Defendant was holding a gun to the head of Salvador Razo. The policemen stopped their car, and as they were exiting their vehicle, they were spotted by the three men. Defendant immediately threw the gun under a car and fled north up a nearby alley with the second man.

Officer Molloy testified that they did not chase the two men immediately because they knew who the defendant was and also knew where he lived. Officer Molloy recovered the gun while Officer Farrell went over to speak to Razo and placed him in the car.

They proceeded by car towards the direction of the defendant's home and when they sighted defendant coming out of a gangway, Officer Molloy got out of the car and attempted to arrest him. Following a struggle, defendant escaped and ran a short distance until Officer Farrell drove the car in front of him, got out of the car, pulled out a gun and ordered him to stop. Defendant was placed under arrest.

The preliminary hearing testimony of Salvador Razo, which had originally been given in Spanish, was read to the jury. When translated by a court interpreter it consisted of essentially the following:

On May 28, 1978, at approximately 12:05 a.m., Razo was walking near the corner of 18th and Racine when two men "attacked me and tried to rob me." He then made an in-court identification of defendant as being one of the men who had attacked him.

Razo further testified that defendant stopped him with a gun in his hand and asked for his money, but that when the two officers arrived defendant dropped the gun and started running.

Defendant testified on his own behalf that on the night in question, he was walking home from a friend's house when two Mexicans across the street called out to him in Spanish, "Hey, brother, come here for a moment."

He stated that the taller man asked him if he was interested in buying a gun, explaining that the immigration authorities had contacted him for deportation back to Mexico and he didn't want to be caught by them with a gun.

Prior to the commencement of the trial, the State presented a motion to allow the use at trial of Razo's testimony at the preliminary hearing and the following pertinent evidence was adduced at the hearing on the State's motion.

Assistant State's Attorney John Feely testified that on March 29, 1979, he issued a subpoena for Salvador Razo, who responded to the subpoena and was interviewed by Feely on three occasions.

Razo informed him that he could be reached by telephone at the home of his brother, Anselmo Razo. Assistant State's Attorney Edward Vienuzis testified that he called Anselmo Razo's residence and spoke to Josephine Razo, Salvador Razo's niece. She informed him that her uncle Salvador was in Mexico and she did not know how he could be contacted.

Richard C. Larson, an investigator for the Cook County Sheriff's Police Department testified that sometime in April 1980, he was instructed by Feely to find Salvador Razo. Larson went to Razo's last known address and spoke to several of the neighbors, who told him they had never heard of Razo.

Subsequently, a second investigator contacted Anselmo Razo at his place of employment. Anselmo stated that his brother had returned to Mexico to get married and was living in south-central Mexico with his fiancee's family, and that he did not know where or how his brother could be contacted.

The selection of the jury at the commencement of trial was conducted entirely by the trial court. The *voir dire* examination included questions concerning the veniremen's relationship with any State's Attorneys or police officers and whether the fact that many of the witnesses and the defendant were Mexican-Americans would affect their ability to be impartial jurors, in addition to general individual questions concerning the prospective jurors' family and background.

During *voir dire*, defense counsel stated that the court had not asked individual jurors certain questions submitted by defense counsel, and moved for a mistrial. The written questions in issue are not included in the record on appeal.

OPINION

We first address defendant's contention that he was denied a fair trial by the admission of Salvador Razo's preliminary hearing testimony at trial. He argues that the State failed to establish reasonable diligence in attempting to locate Razo for appearance at trial.

Citing *People v. Burton* (1972), 6 Ill. App. 3d 879, 286 N.E.2d 792, *cert. denied* (1973), 411 U.S. 937, 36 L. Ed. 2d 399, 93 S. Ct. 1917, defendant correctly asserts that the State has a three-pronged duty to fulfill before the preliminary hearing testimony of an absent witness may be admitted as substantive evidence against an accused at trial. The State must establish (1) that the witness is unavailable at the time of trial, (2) that the State has made a reasonably diligent good faith effort to procure his attendance at trial, and (3) that the accused had an adequate opportunity to cross-examine him at the preliminary hearing.

Defendant contends that the State has failed to meet its threshold

burden of establishing the unavailability of its witness, and specifically argues that the State had not shown by competent evidence that Razo had indeed moved to a foreign country.

■■ We agree that testimony elicited at a preliminary hearing is admissible at trial in only certain limited situations, which include cases where a witness is not available to testify and there has been an ample opportunity to cross-examine. (*People v. Morgan* (1977), 69 Ill. 2d 200, 370 N.E.2d 1063.) In such cases, the testifying witness must be either dead or unavailable despite a good faith effort by the State to produce him. *People v. Brown* (1977), 47 Ill. App. 3d 616, 365 N.E.2d 15.

The standard of review in relation to the exercise of diligence in securing the witness' attendance at trial was set forth in *People v. Niebes* (1979), 69 Ill. App. 3d 381, 389, 387 N.E.2d 800, where the court, citing *People v. Brown* (1977), 47 Ill. App. 3d 616, 621, 365 N.E.2d 15, 19, stated: " 'It is the duty of the State's Attorney to supervise and coordinate efforts to locate witnesses known to be missing prior to trial and secure their presence at trial. Whether good-faith and reasonable diligence has been exercised in these efforts is determined on a case-by-case basis after a careful review of the facts and circumstances of each case.' "

Under the special circumstances of the present case, the testifying witness was reported to be in Mexico. We note that with respect to the production of a testifying witness who is located outside of the country, the United States Supreme Court has commented that, "There have been, however, no corresponding developments in the area of obtaining witnesses between this country and foreign nations [in comparison to the State's obligations to make a good faith effort to obtain the presence of the witness beyond the boundaries of the prosecuting state]." (*Mancusi v. Stubbs* (1972), 408 U.S. 204, 212, 33 L. Ed. 2d 293, 301, 92 S. Ct. 2308, 2313.) In such a situation, the *Mancusi* court held that "the predicate of unavailability [is] sufficiently stronger * * *." 408 U.S. 204, 212, 33 L. Ed. 2d 293, 301, 92 S. Ct. 2308, 2313.

With the foregoing principles in mind, we have carefully examined all the testimony adduced at the hearing on the motion to admit Salvador Razo's preliminary hearing testimony. We find that the State exercised good faith and reasonable diligence in its efforts to locate Salvador Razo in the present case.

Two assistant State's Attorneys who were assigned to this prosecution and their two investigators each participated in the effort to locate Razo. The record indicates that Razo had previously responded to a subpoena sent to 1340 W. 18th Street, Chicago, Illinois, and had been interviewed by assistant State's Attorney Feely on three separate occasions.

On at least one occasion in March of 1979, Razo had come into court

pursuant to subpoena. The record also indicates that he had been present for trial in April of 1979 when the case was continued on defense motion.

He was subsequently not found at his last known address, the same address where the subpoena had been sent, his name was not listed on the mailboxes, and his neighbors indicated they did not know him.

We are not persuaded by the defendant's argument that the State must prove that the witness had actually moved to Mexico and was not just temporarily out of the jurisdiction under the circumstances of this case. There was nothing in the record to suggest that Razo was an illegal alien who was trying to avoid deportation or which refutes the reliability of Razo's family's statements that he had moved to Mexico to marry.

■■ On the contrary, there is every indication that he fully and freely cooperated with the State's Attorney's office in the preparation of this case. We also note that Razo's testimony was independently corroborated at trial by the testimony of the two plainclothes policemen who had witnessed the crime. Accordingly, we conclude that the trial court properly admitted Razo's preliminary hearing testimony.

Defendant also contends that the trial court abused its discretion by failing to ask prospective jurors questions during jury selection which were sufficient to allow him to intelligently exercise his peremptory challenges.

The right to a jury trial guarantees to one accused of a crime a fair trial by a panel of impartial jurors. *People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705.

Under Supreme Court Rule 234 (73 Ill. 2d R. 234) the trial court has the primary responsibility in conducting the *voir dire* examination and may also "permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate * * *." The determination of whether a prospective juror possesses the state of mind which will enable him or her to give the accused a fair and impartial trial rests with the sound discretion of the trial court. *People v. Singletary* (1979), 73 Ill. App. 3d 239, 391 N.E.2d 440.

As the court in *People v. Dallas* (1980), 85 Ill. App. 3d 153, 165, 405 N.E.2d 1202, aptly stated, "[T]he court has discretion in making its decision. In reviewing the court's exercise of its discretion, we must determine whether the court's failure to ask defendants' tendered question thwarted the selection of an impartial jury in the instant case; if it did, then we must determine that the court abused its discretion in declining to ask defendants' question."

■■ Thus, a conviction will not be reversed unless the court has so abused this discretion that the defendant was prevented from intelligently exercising his right to challenge the prospective jurors. (*People v. Sanders*

(1980), 87 Ill. App. 3d 708, 410 N.E.2d 182.) No such abuse has been shown here.

In the present case, the trial court began by introducing the attorneys, explaining the charge and giving a summarized description of the judicial system. The trial judge questioned the jurors collectively concerning any relationships they had with any State's Attorneys or police officers. Each juror that responded affirmatively was questioned individually as to the nature of the relationship and any resulting bias that might affect his or her impartiality as a juror.

The court then dismissed two prospective jurors who stated that they would be influenced by their relatives who were police officers.

The venire panel was also questioned as to whether they had themselves been a party to a lawsuit; whether they knew the parties or witnesses; and whether the fact that the defendant and several witnesses were Mexican-American would affect their ability to be impartial jurors. While questioning the prospective jurors individually in panels of four, the trial court again asked each venireman if he could serve as a fair and impartial juror.

Defendant maintains, however, that the trial court's refusal to ask several questions submitted by the defense counsel or to ask probative questions amounted to an abuse of discretion.

As to the former contention, we note that defendant had not submitted these written questions in the record on appeal as required by Supreme Court Rules 321 and 323. 73 Ill. 2d Rules 321, 323.

■■ It is the responsibility of the appellant to see that the record is complete to enable the reviewing court to resolve the questions raised (*City of Chicago v. Hutter* (1978), 58 Ill. App. 3d 468, 374 N.E.2d 802) since the appellate court takes cognizance of and considers only those issues which are supported by the record. (*Rasky v. Department of Registration and Education* (1980), 87 Ill. App. 3d 580, 410 N.E.2d 69, *appeal dismissed* (1981), 454 U.S. 806, 70 L. Ed. 2d 75, 102 S. Ct. 78.) We therefore find that the defendant has waived review of this issue.

■■ As to the defendant's latter contention, we believe that the areas of inquiry covered by the court through its admonitions and questions to the prospective jurors were adequately probative. Accordingly, we conclude that the trial court did not abuse its discretion.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.