*In re* J.S. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. J.S. *et al.*, Minors, Respondents-Appellants).

First District (5th Division)   Nos. 85—0719, 85—1032, 85—3618 cons.

Opinion filed February 27, 1987.

James J. Doherty, Public Defender, of Chicago (Dennis E. Urban, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Bonnie Meyer Sloan, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Respondents were charged in delinquency petitions with aggravated battery and home invasion. Following a bench trial they were found to be delinquent, adjudicated wards of the State, and committed to the Department of Corrections. On appeal respondents contend that the trial court erred in admitting into evidence complainant's preliminary hearing testimony and a statement that she made to her niece the morning after the offenses occurred.

The State's principal witness was Julian Samaniego, who had been charged in an information with home invasion arising out of the same incident as the minor respondents. Samaniego agreed to testify truthfully at respondents' trial in exchange for the State's promise to

reduce the charge against him to burglary and to recommend a period of probation.

Samaniego testified that at approximately 5 p.m. on February 9, 1983, he met all three respondents, whom he had known for several years, at an arcade in the vicinity of 108th and Calhoun in Chicago. One hour later they left the arcade and began walking through the public housing projects located at 105th and Yates. According to Samaniego, they talked about "getting some money together" and agreed to break into a nearby home. Samaniego did not know the address of the house or who lived there. Samaniego stated that two of the respondents climbed through a rear window while he stayed outside in the gangway with the third respondent to watch for the police. The two respondents who had entered the residence through the rear window exited from the front door five minutes later. All four offenders then fled from the scene.

Samaniego and respondents regrouped later that evening. One of the respondents who had gone into the home told Samaniego that he had pushed the old woman who lived there into her chair when she tried to stand up. He also told Samaniego that he used to go to the store for her.

Helen Brooks testified that at 11 a.m. on February 10, 1983, she went to visit her 95-year-old great-aunt, Rose Hansen, who lived alone in a first-floor apartment located at 10538 South Yates in Chicago. When she arrived, Brooks, who had a key to the apartment, noticed that the chain lock had been secured on the inside of the front door, which was unusual. After Brooks was admitted Hansen told her, "Girl, I've been robbed!" Hansen looked "absolutely terrified." There were bruises on her right arm from her hand to her shoulder and her wrist was broken. The bedroom window in Hansen's apartment was open and could not be closed and locked. There was no telephone in the apartment.

The State introduced into evidence the transcript of Rose Hansen's testimony at Julian Samaniego's preliminary hearing. Sometime after that hearing Hansen suffered a serious stroke and was unable to testify at respondents' trial. Respondents were not parties to the preliminary hearing and neither they nor their attorneys were present at that hearing. Hansen testified that at 8 p.m. on February 9, 1983, two boys came into her house through a window and knocked her down. One of them "squeezed" her arm and "did the damage." They left without taking anything. Hansen was unable to identify her assailants.

Respondents denied committing the offenses charged and pre-

sented alibi defenses. One of the respondents admitted that he had stayed away from his home for several days after he discovered that the police wanted to question him. The State presented rebuttal evidence contradicting the alibis and introduced certified copies of prior findings of delinquency as to two of the respondents.

Respondents were found to be delinquent, adjudicated wards of the State, and committed to the Department of Corrections. This appeal follows.

Respondents, as we have noted, contend that the trial court erred in allowing the State to introduce into evidence Rose Hansen's preliminary hearing testimony and her statement to her niece that she had been robbed. Respondents argue that the preliminary hearing testimony should not have been admitted as the prior recorded testimony of an unavailable witness because they were not parties to that proceeding and neither they nor their attorneys were present at that hearing or had an opportunity to cross-examine Rose Hansen. They argue further that the statement Hansen made to her niece did not qualify as an excited utterance because it was too remote in time from the incident to which it allegedly referred.

We agree with respondents that Rose Hansen's preliminary hearing testimony was inadmissible. A witness' previous testimony may be admitted into evidence at a trial, as an exception to the hearsay rule, if the witness has become unavailable and the current opponent of the evidence had the opportunity to cross-examine the witness at the earlier hearing. (*People v. Wilkerson* (1984), 123 Ill. App. 3d 527, 534, 463 N.E.2d 139, citing *Laboy v. Industrial Com.* (1978), 74 Ill. 2d 18, 383 N.E.2d 954, and *People v. Jackson* (1968), 41 Ill. 2d 102, 242 N.E.2d 160.) In a criminal proceeding, this does not violate a defendant's constitutional right to confront his accusers. *People v. Allen* (1974), 56 Ill. 2d 536, 545-46, 309 N.E.2d 544.

The State has a three-pronged duty to fulfill before the preliminary hearing testimony of an absent witness may be admitted as substantive evidence against an accused at trial. The State must establish that the witness is unavailable at the time of trial; that the State has made a reasonably diligent, good-faith effort to procure his attendance at trial; and that the accused had an adequate opportunity to cross-examine him at the preliminary hearing. (*People v. Aldaco* (1982), 107 Ill. App. 3d 672, 675, 437 N.E.2d 905.) The State admittedly did not fulfill this duty in the case at bar. Respondents were not parties to Julian Samaniego's preliminary hearing and neither they nor their attorneys were present at that hearing or had an opportunity to cross-examine Rose Hansen, who testified against Samaniego.

Accordingly, we conclude that Hansen's preliminary hearing testimony was not admissible at their trial.

■ We also agree with respondents that Rose Hansen's statement to her niece, Helen Brooks, that she had been robbed did not qualify as an excited utterance. Three factors are necessary to bring a statement within this exception to the hearsay rule: an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; absence of time to fabricate; and the statement must relate to the circumstances of the occurrence. (*People v. Poland* (1961), 22 Ill. 2d 175, 181, 174 N.E.2d 804.) The second and third factors are absent here.

■ The record reveals that between 15 and 17 hours elapsed between the home invasion and the statement that Rose Hansen made to her niece. There is no evidence that Brooks was the first person whom Hansen spoke with after she was injured nor was there any accounting of her activities between the time she received her injuries and when she saw her niece. More significantly, Hansen's statement that she had been robbed clearly does not relate to the circumstances of the occurrence. The State presented no evidence that Hansen had been robbed and Hansen herself testified at the preliminary hearing that the two boys who had entered her home and attacked her left without taking anything. On the basis of the record before us, we conclude that Rose Hansen's statement to her niece did not qualify as an excited utterance.

■ The State argues in the alternative that the error in admitting this evidence was harmless. We disagree. There was no direct evidence that respondents had invaded Rose Hansen's home. (Julian Samaniego could not identify the home which respondents had entered.) In the absence of Hansen's preliminary hearing testimony, there was no circumstantial evidence from which it could even be inferred that respondents had invaded her home and attacked her. Helen Brooks' testimony established only that her aunt had sustained injuries to her right arm. She could not testify as to how or when those injuries had been inflicted. On the basis of the record before us, we cannot conclude that the error in admitting the preliminary hearing testimony or the statement was harmless. Accordingly, we reverse the findings of delinquency and remand for a new trial.

Reversed and remanded.

LORENZ and MURRAY, JJ., concur.