THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEROY McCAMBRY, Defendant-Appellant.

First District (1st Division) No. 1—87—3452

Opinion filed September 3, 1991.

Randolph N. Stone, Public Defender, of Chicago (Shelton O'Neal Green, Assistant Public Defender, of counsel), for appellant.

John M. O'Malley, State's Attorney, of Chicago (Renee Goldfarb, David Stabrawa, and Anthony L. Burrell, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

After a bench trial, the defendant LeRoy McCambry was convicted of robbing David Anderson (Ill. Rev. Stat. 1987, ch. 38, par. 18—1(a)). The defendant appeals his conviction.

On October 22, 1986, at approximately 4 a.m., the defendant was arrested for robbing David Anderson. At a preliminary hearing, David Anderson testified: On October 22, 1986, at approximately 1:20 a.m.,

he was waiting in his car at 40 East 113th Place in Chicago, Illinois. While he waited for his car to start, he fell asleep, and the defendant and Bernard Watts, a codefendant, approached the car. The defendant and Watts threatened Anderson; forced him out of the car; threw him to the ground; held him; beat him; and stole $230, a money order for $190 and his wife's wedding ring, which was a diamond solitaire, and his wife's wedding band, which had three small diamond settings. Later that day, Anderson identified his wife's rings at the police station.

On cross-examination, Anderson testified: He had fallen asleep in his car and the assailants woke him up. He had been drinking earlier that evening. He had some car trouble. He was not sure how long the robbery took place. He pleaded with the assailants. He did not remember how far the nearest light was to his car, but the light was at the corner. Prior to the incident, he had never seen the assailants. He was hit by both assailants. He was "hurting pretty bad" as a result of the robbery.

On July 22, 1987, the State argued its pretrial motion to introduce Anderson's preliminary hearing testimony on the grounds that Anderson was an unavailable witness. Before ruling on the admissibility of Anderson's testimony, the court stated "I'll make a ruling on the admissibility of Mr. Anderson's purported testimony for the purposes of the truth and falsity of that testimony after I've heard all of the evidence relative to the entire issue of admissibility."

As support for its motion, the State called Rodney Fontaine. He testified: He is employed by the Cook County sheriff's police department. He was assigned to the State's Attorney's office to assist the assistant State's Attorney assigned to this case. He attempted to locate Anderson. He tried to serve two subpoenas on Anderson. He visited Anderson's purported residence, 21637 Clyde in Sauk Village, Illinois, three times. Initially, he visited the house before May 1987 and left the subpoena in the mailbox. Then, he visited the house on May 22, 1987, and on June 16, 1987. Anderson's neighbors said that they had not seen anyone in the house since March of 1987. On the telephone, he spoke with Anderson's ex-employer, Jewel Foods, in Munster, Indiana, and they told him that Anderson was terminated in February of 1987 and that they did not have any further address or information.

On June 16, 1987, the post office told Fontaine that they sent Anderson's mail back to the senders. The post office did not have a forwarding address. Anderson's telephone was disconnected and there was not a forwarding number. When Fontaine ran a "check" on

Anderson's driver's license, he discovered that Anderson's license expired in 1986 and that he had previously resided at 8106 South Chappel in Chicago. When Fontaine visited 8106 South Chappel, he discovered that Anderson was not living there. The neighbors of such residence said that Anderson had moved to Sauk Village. On June 16, 1987, the Illinois Department of Public Aid indicated that Anderson was not employed and that his last employer was Jewel Foods in Munster, Indiana. On May 22 and June 16, 1987, he spoke with Anderson's ex-wife, Carolyn Anderson. Carolyn said that Anderson owed her child support and that she had not seen Anderson in several months. "The last she heard he was living out of State, possibly in Indiana with relatives." She did not know where Anderson was or how to reach him. Carolyn said that she would call Fontaine if she obtained any more information about Anderson. Fontaine did not run any "checks" to determine if Anderson had an address in Indiana.

After hearing arguments, the trial court ruled that the transcript of Anderson's testimony would be admissible but directed that Carolyn should be contacted one more time to determine if she had any address regarding the witness' family. Then, the assistant State's Attorney stated that, as an officer of the court, she spoke with Carolyn two days ago and she had no idea where her husband was located, where his relatives resided or how to find him. Thereafter, the court allowed the transcript of Anderson's testimony to be allowed into evidence.

On August 4, 1987, the defendant's and Watts' trial commenced. The transcript of Anderson's preliminary hearing testimony was read into the record. Thereafter, the State called Chicago police officer Steven Shoup and he testified: On October 22, 1986, he was working from 12 to 8:30 a.m. with his partner, Patricia Dowling. While Officers Shoup and Dowling were responding to a different incident, they were informed that a robbery occurred at 113th and State and received the offenders' descriptions. When Officer Shoup was in the area of the robbery, he saw two individuals run from a yard. One of the individuals ran back into the yard, and the second individual, Darryl Williams, was stopped. Sometime later, Officer Shoup placed the defendant under arrest. Later that morning, Bernard Watts was arrested. Officer Shoup was present when the defendant was searched. Two rings were found in the defendant's pockets. In a lineup, Anderson identified the defendant and Watts as the individuals who robbed him. Officer Shoup was of the opinion that Anderson was not intoxicated.

On cross-examination, Officer Shoup testified: Anderson's breath smelled of alcohol, his speech was slightly slurred, his eyes were red and he swayed a bit as he stood. He was present at the lineup that included the defendant, Watts and two other men. He identified a photograph that depicted the lineup. The lineup consisted of four black men. Two of the men were wearing black "baseball" hats. The defendant and Watts were not wearing hats.

Then, Carolyn Anderson testified: She had been married to David Anderson, and on October 22, 1986, she was living with David Anderson. On October 26, 1986, she owned an engagement ring and a wedding ring. During the day, she took the rings off and placed them on top of her refrigerator. After David Anderson left her home on October 22, 1986, she never saw her rings again until she came to court and identified them. She had the rings for over three years and she recognized the initials inscribed into the ring. David Anderson had her rings the evening of October 22, 1986.

The defendant testified, on his own behalf, to the following: He had never seen those rings before, but he admitted that he had possession of them. On October 22, 1986, he bought the rings from Darryl Williams around 1:45 a.m. at 114th and South Perry. On cross-examination, the defendant stated that he spoke with the police after he was arrested and told the police that the rings were his girl friend's.

After closing arguments, the court found Watts not guilty and the defendant guilty. The defendant was sentenced to five years' imprisonment.

 Defendant argues that the trial court erroneously admitted Anderson's testimony. We agree. A witness' previous testimony may be admitted into evidence at trial, as an exception to the hearsay rule, if the witness has become unavailable and the current opponent of the evidence had the opportunity to cross-examine the witness at the earlier hearing. (*In re J.S.* (1987), 153 Ill. App. 3d 154, 157, 505 N.E.2d 1128, *appeal denied* (1987), 115 Ill. 2d 541, 511 N.E.2d 429; *People v. Aldaco* (1982), 107 Ill. App. 3d 672, 676, 437 N.E.2d 905.) The party seeking admission of a witness' prior testimony must satisfy a three-pronged test: (1) that the witness is dead or unavailable to testify; (2) that a reasonably diligent, good-faith effort to produce the witness has been made; and (3) that there has been an adequate opportunity to cross-examine the witness at the preliminary hearing. (*In re J.S.* (1987), 153 Ill. App. 3d 154, 157, 505 N.E.2d 1128; *People v. Aldaco* (1982), 107 Ill. App. 3d 672, 675, 437 N.E.2d 905.) In short, we reverse the defendant's conviction because he did not have an adequate

opportunity to cross-examine Anderson and, thus, Anderson's testimony lacked reliability.

■■ ■ The confrontation clause was designed primarily to secure a defendant's right to cross-examine those witnesses who appeared and testified adversely to the defendant. (*Flewallen v. Faulkner* (7th Cir. 1982), 677 F.2d 610, 612, *cert. denied* (1982), 459 U.S. 908, 74 L. Ed. 2d 170, 103 S. Ct. 214.) The United States Supreme Court has recognized that the right of cross-examination would mean little if the admission of hearsay were not also restricted to some degree. Thus, hearsay must pass two tests before it can constitutionally be admitted against a criminal defendant. First, the hearsay must be necessary, which means the declarant must be unavailable for the trial. (*Ohio v. Roberts* (1980), 448 U.S. 56, 65-66, 65 L. Ed. 2d 597, 607, 100 S. Ct. 2531, 2538; *Burns v. Clusen* (7th Cir. 1986), 798 F.2d 931, 936-37.) Second, the prosecution must make a showing of particularized guarantees of "trustworthiness" or that the testimony is marked by adequate "indicia of reliability." (*Ohio v. Roberts* (1980), 448 U.S. 56, 65-66, 65 L. Ed. 2d 597, 607, 100 S. Ct. 2531, 2539; *United States v. Howard* (7th Cir. 1985), 774 F.2d 838, 845-46.) Testimony given at a preliminary hearing which was cross-examined by defense counsel is admissable when it has the requisite "indicia of reliability." (*Ohio v. Roberts* (1980), 448 U.S. 56, 66, 65 L. Ed. 2d 597, 607-08, 100 S. Ct. 2531, 2539 (where the court found that the confrontation clause was not violated when defense counsel had tested such testimony at preliminary hearing with the equivalent of "significant" cross-examination).) Consequently, the question is not whether there was an opportunity for full and complete cross-examination, but rather, whether there is adequate indicia of reliability.

■■ Here, the defendant was unable to question Anderson about the lineup's "suggestive nature." His counsel was not aware that two out of the four men in the lineup wore hats, because Supreme Court Rule 411 did not allow discovery before a preliminary hearing and because cross-examination was limited by the scope of direct examination. We find that defense counsel's inability or failure to cross-examine Anderson with respect to the lineup was significant and affected the trial court's ability to gauge the reliability of Anderson's identification. There simply was not enough time for defense counsel to learn that the lineup was allegedly suggestive, to learn that there were photographs, to issue a subpoena for the photographs and to have the photographs produced at the preliminary hearing. Thus, Anderson's testimony failed to fulfill the *Roberts* "indicia of reliability" test because the defendant did not have an adequate opportunity to cross-ex-

amine Anderson about what Anderson claimed to know and the claimed basis for the knowledge.

Based upon the foregoing, the defendant's conviction is reversed.

Reversed.

MANNING, P.J., and CAMPBELL, J., concur.