THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRANDEL SUTTON, Defendant-Appellant.

First District (3rd Division)    No. 1—92—3257

■

Opinion filed March 30, 1994.

John F. Klunk, of Lockport, and Mary Ellen Dienes, of Northfield, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Gunta Z. Hadac, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

After a jury trial, defendant Brandel Sutton was convicted of two counts of possession of a controlled substance with intent to deliver and sentenced to concurrent terms of 25 and 10 years' imprisonment.

Defendant argues on appeal that: (1) the trial court erred by denying his motion to suppress the search warrant and produce the confidential informant whose information was allegedly used to obtain the warrant; (2) the trial court further erred by admitting in evidence at trial the preliminary hearing testimony of a State witness who died before trial; and (3) the prosecutor's misconduct in charging defense counsel with lying and in unfairly minimizing the impeachment value of the police reports denied defendant a fair trial.

We affirm the trial court.

On January 2, 1991, police officer David Strain presented a complaint for a search warrant based on a conversation with a confidential informant. According to Officer Strain's complaint affidavit, Strain knew the informant for the past five years and, during the last six months, received information which resulted in numerous arrests involving narcotic activities. Earlier that day, the informant related to Officer Strain that in the morning he had accompanied defendant to an apartment at 12001 South Prairie in Chicago, where he had seen approximately two ounces of a white rocky substance which defendant identified as raw white heroin. The informant stated that, after ingesting some of the powder, he recognized the substance as heroin based on personal experience with the drug. Defendant then gave the informant a package containing at least 200 tinfoil packets, which the informant knew was a manner of packaging heroin for street sales, to conceal in his pants. The informant confirmed that the packets contained heroin after tasting the contents of a few packets.

The informant recounted how he and defendant left the apartment for the Cabrini Green public housing complex, where black males purchased the packets for large sums of money. Defendant then offered the informant a job selling heroin for $200 a day, and told the informant how all of his "product" was packaged at 12001 South Prairie and that he had as much heroin on hand at that location as the informant had seen to avoid "going dry."

A search warrant issued based on this information, authorizing the police to search a black male known as Brandel Sutton and the

apartment at 12001 South Prairie, and to seize heroin and any items used in the packaging of heroin.

On January 4, 1992, defendant was arrested and charged with two counts of possession of a controlled substance with intent to deliver. Defendant then filed a motion to produce the informant, alleging Officer Strain had fabricated grounds for the search warrant to issue and that no such informant existed, and requested a hearing pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674.

■ In *Franks*, the Supreme Court recognized that although an affidavit supporting a search warrant is presumed valid, a defendant has a right to challenge its veracity. (*Franks*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674; accord *People v. Lucente* (1987), 116 Ill. 2d 133, 506 N.E.2d 1269.) The trial court will grant a motion to quash the search warrant if, after a hearing, the defendant proves by a preponderance of the evidence the affiant made false statements in the affidavit, either intentionally or with reckless disregard for the truth, and the false statements were necessary to establish probable cause. *Franks*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674; see *People v. Elworthy* (1991), 214 Ill. App. 3d 914, 920, 574 N.E.2d 727.

Aside from defendant's affidavit, defendant supported the motion with affidavits from his girl friend (Bronzella Boyd), his girl friend's father (Sammy Smith), his girl friend's sister (Wanda Boyd) and her boyfriend (Shelton Miller), and Nikita Pummer, who placed defendant in an apartment located across town on the evening of January 1, 1991, and elsewhere than 12001 South Prairie or Cabrini Green the following morning. Defendant also submitted the affidavits of Eldridge Robinson (defendant's lifelong friend) and Kimberly Neeley (defendant's friend for eight years, former girl friend and the mother of his child), who asserted that Officer Strain told them that the alleged informant did not exist and that he learned about the Prairie address from a receipt found on Neeley during a previous arrest.

At a hearing on August 28, 1991, the trial court found the affidavits of Robinson and Neeley sufficient to order the State to produce the confidential informant's file for *in camera* inspection.

After reviewing the file, the court on September 25, 1991, determined that the informant did exist but denied defendant's motion to produce the informant.

At the October 25 hearing, by reason of Strain's death, the court agreed to have the informant brought into chambers for an *in camera* hearing for which defendant could submit questions, "and then and only then if I do not get satisfactory answers to those questions, I will then call counsel into chambers for counsel to do it." The court never called defense counsel into chambers for this purpose.

Defendant filed an amended motion to quash the search warrant and a motion to produce the informant (amended motion), whom he identified as L.T. Neeley, which alleged that Officer Strain never received any of the information contained in the complaint from Neeley. Although the court rejected defendant's identification of Neeley, it granted him a *Franks* hearing to determine whether Officer Strain falsified the information in the complaint.

At the *Franks* hearing, defendant produced two witnesses. Eldridge Robinson provided testimony which expanded on his previous statements submitted in his affidavit. The court undertook some of the questions surrounding the execution of his affidavit.

Defendant then presented Kimberly Neeley, who testified that Officer Strain arrested her on December 6, 1990, and took from her narcotics, personal papers and $85,000. Four months later, Neeley recalled that after four police officers, including Strain, searched her apartment, Strain informed her that "[defendant's] lawyer is not going to find the informant because there wasn't any *** [h]e got the rent receipt off me with the address on it." Also at this time, Neeley realized that not all of the personal papers were returned to her nor did she receive a receipt for the money, of which only $77,000 was inventoried. When questioned by the trial court on this matter, Neeley stated that she never filed a complaint with the authorities since the money did not belong to her.

After finding the two defense witnesses incredible, the court denied defendant's motion to produce the informant.

On February 21, 1992, the defendant filed a motion urging the trial court to reconsider its refusal to produce the confidential informant, which was denied.

On May 4, 1992, defendant filed a motion to reopen his motion to produce the informant and request for documents based on newly discovered evidence. Attached to the motion was the transcribed statement of Edward White, a prison inmate, which alleged that White was the informant whom Officer Strain paid for information that defendant lived at 12001 South Prairie. Based on White's statement, the court allowed defendant to reopen his motion to quash the warrant and scheduled a hearing.

On May 7, 1992, following argument, the court denied defendant's motion on grounds that White's statement that Officer Strain gave him $400 and bags of narcotics simply for defendant's address was incredible, especially since White came forward on the eve of trial to make allegations against a deceased police officer. The court then set the case for trial.

At trial on August 18, 1992, the State introduced into evidence

Officer Strain's previously transcribed testimony from a preliminary hearing. The State also provided testimony from several police officers who executed a search warrant on January 4, 1991 at 12001 South Prairie Avenue, a two-story building with security bars on the windows and doors of the first-floor apartment. No officer testified to recovering any document identifying defendant's address as 12001 South Prairie; however, a vice case report summarizing the events at issue included defendant's admission to his residence at this address as well as his ownership of the recovered contraband.

Officer Robert Weston testified that on said date at approximately 6 a.m., he and several police officers, including David Strain, were attempting to enter the first-floor apartment at 12001 South Prairie Avenue when defendant appeared at the second-floor window. Defendant withdrew when the officers shouted "don't move, search warrant." Within minutes the officers pulled the bars off the window and entered the building, then moved to the back of the apartment, where they saw defendant exiting the bathroom, which sounded of flushing water. Weston handcuffed defendant and then entered the bathroom, where he observed a substantial amount of white powder in the flushing water and on the toiletbowl rim.

Officer Jackson testified that, after he and Officer Strain arrived on the scene, Strain attempted to recover the white powder from the toilet and then advised defendant of his *Miranda* rights, which defendant acknowledged that he understood. Defendant then stated, "Don't tear up my house *** I will show you where it is at" and led the officers into a bedroom and pointed to the underside of a cabinet from where Officer Weston removed a plastic container containing 240 folded aluminum foil packets and clear plastic packets as well as two clear plastic bags containing a white or light brown powder. The police also recovered a portable telephone, a "seal-a-meal" machine, a grinder and a bag containing $5,400 in cash.

The police proceeded to search the living room and recovered two plastic bags containing white powder suspected to be cocaine from inside a vase, a fully loaded two-shot Derringer and two bags of a crushed, green substance from inside a table, and a fully loaded .44-caliber magnum from under a couch.

Officer Kenneth Charles testified that based on defendant's description of a gun in a kitchen drawer, the police recovered a fully loaded semi-automatic pistol and two fully loaded clips.

Officer Charles' partner, Walter Collier, testified how he recovered a fully loaded revolver from the ceiling above a second-floor bedroom.

The police delivered the recovered items to the station for inventory.

The State then presented testimony from two expert witnesses specializing in the analysis of controlled substances who essentially identified 16.43 grams of heroin in approximately 74 of the aluminum foil packets, and 177.34 grams of cocaine in one of the plastic bags.

The parties stipulated that the crushed, green substance recovered at 12001 South Prairie was marijuana weighing 5.14 grams and that the chain of custody of all the recovered items was proper and correct.

The State's final witness was Officer Karen Morrissett, an expert in the sale of narcotics, who testified that the street value of the confiscated heroin approximated $3,000 and the value of the cocaine amounted to $17,000. Officer Morrissett also identified the items recovered at 12001 South Prairie (i.e., the grinder, funnel, sealer and portable phone) as customary in the sale of narcotics.

The jury found defendant guilty of both counts of possession of a controlled substance with intent to deliver, and the court sentenced him to 25 years' imprisonment for the possession of 204.96 grams of cocaine with intent to deliver to run concurrently with 10 years' imprisonment for possession of 32.3 grams of heroin with intent to deliver.

Defendant begins his argument by challenging the trial court's denial of his motions to quash the search warrant and produce the confidential informant and related documents on grounds that he did not receive a fair *Franks* hearing.

Initially, we note that defendant has waived this issue on appeal due to his vague allegations of trial error stated in paragraph four of his post-trial motion:

> "The court erred in denying [defendant's] motion to quash search warrant and produce informant, allowing admission of evidence which was introduced by the State at trial in violation of defendant's rights under the United States and Illinois Constitution."

Vague allegations set forth in a post-trial motion for new trial fail to preserve the issue for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 187-88, 522 N.E.2d 1124; see *People v. Buchanan* (1991), 211 Ill. App. 3d 305, 312, 570 N.E.2d 344; *People v. Sargent* (1989), 184 Ill. App. 3d 1016, 1021-22, 540 N.E.2d 981.) However, we consider defendant's argument under the plain error exception to the waiver rule. *People v. Schrems* (1992), 224 Ill. App. 3d 988, 994, 586 N.E.2d 1337, citing *Enoch*, 122 Ill. 2d at 188 (denial of defendant's motion to quash arrest and suppress evidence reviewable despite defendant's failure to allege the error with specificity in his post-trial motion); *People v. Follins* (1990), 196 Ill. App. 3d 680, 691-92, 554 N.E.2d 345.

In support of this argument, defendant first contends that the trial court erred in denying his motion to quash the warrant which established on its face that Officer Strain falsified the information in the complaint.[1]

The State claims that defendant lacks standing to argue suppression of the evidence since he had no legitimate expectation of privacy in the searched apartment or possessory interest in the seized evidence. (See *Rakas v. Illinois* (1978), 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421.) This contention is misplaced. Unlike the defendants in *People v. Casas* (1992), 234 Ill. App. 3d 847, 853, 601 N.E.2d 798, or *People v. Bond* (1990), 205 Ill. App. 3d 515, 563 N.E.2d 1107, defendant explicitly expressed his interest in the searched area; namely, his home and his furniture located therein from which the police discovered various contraband. In fact, defendant stated to the police officers conducting the search, "Don't tear up *my* house, *** I will show you where [the contraband] is at." (Emphasis added.) This statement and others, such as defendant's description to Officer Charles of a gun in the kitchen drawer, further evince defendant's possessory interest in the seized evidence. Because defendant had standing to challenge the propriety of the seizure, the trial court had jurisdiction to consider defendant's arguments in support of his motion to quash the search warrant.

A trial court cannot quash a search warrant on grounds that the affiant secured the warrant by means of false information without first conducting a *Franks* hearing. Whether the defendant prevails at that hearing is another issue. (*Franks*, 438 U.S. at 172, 57 L. Ed. 2d at 682, 98 S. Ct. at 2685.) In ruling on a motion to quash or suppress, it is the trial court's province to determine the credibility of witnesses and the weight to be given their testimony. (See *People v. Gales* (1993), 248 Ill. App. 3d 204, 219, 618 N.E.2d 847.) The court's denial of the motion will not be overturned absent manifest error. *Gales*, 248 Ill. App. 3d at 219.

■ The record shows that the trial court's denial of defendant's motion to quash was not against the manifest weight of the evidence. Upon review of defendant's "Motion to Produce Informant," the court determined that the affidavits of defendant, Bronzella Boyd,

---

[1]For purposes of this argument, we assume that defendant refers to his "Amended Motion to Quash Search Warrant and Motion to Produce Informant" since his initial motion, entitled "Motion to Produce Informant," only asked the court to order the State's Attorney "to disclose and produce certain citizen informant for an *in camera* hearing to establish his existence."

Sammy Smith, Wanda Boyd, Shelton Miller and Nikita Pummer represented alibi affidavits insufficient to make the substantial preliminary showing required to entitle defendant to a *Franks* hearing. (See *People v. Martine* (1985), 106 Ill. 2d 429, 435-36, 478 N.E.2d 262; see *People v. Birge* (1985), 137 Ill. App. 3d 781, 485 N.E.2d 37.) Mere denials of the facts alleged by the officer-affiant do not overcome the presumption of validity of complaint affidavits. (*Birge*, 137 Ill. App. 3d at 788; see *People v. Coss* (1993), 246 Ill. App. 3d 1041, 1045, 617 N.E.2d 138.) However, the court allowed defendant to proceed to a *Franks* hearing based on the affidavits of Eldridge Robinson and Kimberly Neeley, who stated that Officer Strain admitted to them that he lied about the existence of the informant.

At the *Franks* hearing, defendant failed to prove his claim of perjury by a preponderance of the evidence. (See *Lucente*, 116 Ill. 2d at 147, citing *Franks*, 438 U.S. at 155-56, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676.) The court determined that Robinson's and Neeley's statements "defied common sense and logic" in suggesting that a police officer would share with defendant's close friends, one of whom was the mother of his child, the fact that the officer had committed perjury in executing the search warrant affidavit.

Nevertheless, the court allowed defendant other opportunities to challenge the informant's existence based upon a different theory; namely, that a confidential informant did exist but not as described by Strain. Defendant first identified the informant as L.T. Neeley; however, the court rejected this possibility after conducting an *in camera* review of the informant's file. Defendant later identified the informant as Edward White, and the court also rejected this identification since White's testimony was riddled with inconsistencies when compared with Officer Strain's warrant affidavit.

Defendant avers that the court compounded the error of denying the motion to quash by refusing to grant him a continuance to secure White's presence at the hearing on his motion to produce the confidential informant and quash the search warrant. However, defendant has waived this contention by failing to state the nature of the harm of the alleged error. (See *People v. Patterson* (1992), 154 Ill. 2d 414, 454-55, 610 N.E.2d 16 (issues raised but not argued or supported by citation to relevant authority are waived); see 134 Ill. 2d R. 341(e)(7).) Moreover, defendant cannot claim prejudice by the trial court's denial of his continuance when the record reflects that he had sufficient time to secure a court reporter and arrange with prison officials for an opportunity to transcribe White's statement.

■ The record also shows that the trial court properly denied defendant's motion to produce the confidential informant. Generally,

trial courts are not required to disclose the identity of a confidential informant unless the failure to do so would infringe upon the defendant's constitutional rights. (*Elworthy*, 214 Ill. App. 3d at 921-22, citing 134 Ill. 2d R. 412(j)(ii).) Disclosure of an informant's identity for testimony at a *Franks* hearing may be required if the trial court doubts the credibility of the affiant (*People v. Friend* (1988), 177 Ill. App. 3d 1002, 533 N.E.2d 409), but not if the issue is one of probable cause "and guilt or innocence is not at stake." (*People v. McBee* (1992), 228 Ill. App. 3d 769, 773, 593 N.E.2d 574, citing *McCray v. Illinois* (1967), 386 U.S. 300, 311, 18 L. Ed. 2d 62, 70, 87 S. Ct. 1056, 1062.) Whatever the circumstances, the defendant must demonstrate his need for disclosure (*McBee*, 228 Ill. App. 3d at 773), and that need must be more than a mere desire to cross-examine. *People v. Verdone* (1985), 107 Ill. 2d 25, 31, 479 N.E.2d 925; see *People v. Rodriguez* (1983), 119 Ill. App. 3d 575, 578, 456 N.E.2d 989.

Initially, we acknowledge that defendant challenged the informant's identity for reasons of probable cause rather than guilt or innocence. Defendant, in his "Motion to Produce Informant," requested the court to disclose the informant's identity to prove that "said warrant was issued without probable cause" based on Officer Strain's alleged falsehoods. Hence, disclosure was unnecessary under *McCray*. See *McBee*, 228 Ill. App. 3d at 773.

In addition, the trial court maintained Officer Strain's credibility throughout the proceedings. After twice reviewing the informant's file *in camera* in light of the factors that defendant requested the court to consider, the court determined that the informant existed as stated in Strain's affidavit but, nevertheless, allowed the case to proceed to a *Franks* hearing.

At the hearing, defendant demonstrated that his request to produce the informant was based upon a mere desire to cross-examine. Defendant repeatedly argued that the informant was the only person whom he could call to testify as to whether or not the information provided to Strain was false. Clearly, defendant did not provide a constitutional basis for production of the informant, and a *Franks* hearing ought not be used for mere discovery. *Verdone*, 107 Ill. 2d at 30-31.

The court continued to uphold the warrant's validity when defendant moved to reopen his motion to produce the informant based on Edward White's affidavit. However, the information in White's affidavit omitted and contradicted essential facts set forth in Officer Strain's warrant affidavit. (See *Martine*, 106 Ill. 2d at 435-36.) Because defendant failed to satisfy his burden to rebut the warrant's validity, the court's determination of Strain's credibility as grounds to deny

defendant's motion to produce the informant was not against the manifest weight of the evidence.

Defendant also argues that he was denied a fair *Franks* hearing because the trial court denied his motion to produce documents, including all search warrants obtained by Officer Strain between June 4, 1990, and January 4, 1991, and 17 police reports wherein Officer Strain alleged that the informant provided him with information. The trial court examined these 17 police reports and, under seal, they are part of the record on appeal.

Courts recognize that without some discovery a defendant may have difficulty proving his challenge to the existence or reliability of a confidential informant under *Franks*. (*Elworthy*, 214 Ill. App. 3d at 921, citing *People v. Torres* (1990), 200 Ill. App. 3d 253, 558 N.E.2d 645.) However, the trial court has discretion to grant discovery for a *Franks* hearing depending on whether the court considers the documents at issue relevant. *Elworthy*, 214 Ill. App. 3d at 921.

■ Defendant contends that the documents at issue "would have allowed the defendant to establish, if other officers had used the informant, whether they could be cross-examined relative to the affiant officer's reckless disregard of the truth or perjury." However, defendant has waived this contention by failing to specify the harm of the alleged error. (*Patterson*, 154 Ill. 2d at 454-55.) Moreover, defendant has failed to establish the relevancy of the documents to the issues of guilt or innocence to justify their production.

Defendant also claims that Strain's affidavit in this case contained "boiler plate" language and if the additional search warrants also contained "boiler plate" language, they would have tended to show Strain was untruthful. (See *Elworthy*, 214 Ill. App. 3d at 921.) "However, even if the previous affidavits contained 'boiler plate' language, they would not establish the untruthfulness of the affidavit in the present case." (*Elworthy*, 214 Ill. App. 3d at 921, citing *People v. Hodges* (1987), 159 Ill. App. 3d 38, 512 N.E.2d 19.) Since defendant failed to prove the relevance of the additional documents, the court's denial of this motion was not an abuse of discretion. *Elworthy*, 214 Ill. App. 3d at 921.

Defendant next argues that the trial court's "cross-examination" of Eldridge Robinson and Kimberly Neeley denied him a fair *Franks* hearing from an impartial trier of fact.

Initially, defendant has waived this argument by failing to object at trial. (*People v. Robinson* (1992), 236 Ill. App. 3d 313, 316, 603 N.E.2d 25; see *Enoch*, 122 Ill. 2d at 190.) Notwithstanding waiver, however, the record supports the propriety of the trial court actions.

■ The trial court does not, as defendant argues, assume the role

of prosecutor merely because its questions solicit evidence material to the State's case. (*People v. Murray* (1990), 194 Ill. App. 3d 653, 658, 551 N.E.2d 283.) The court has discretion to question a witness " 'to elicit the truth or to bring enlightenment on material issues which seem obscure.' " (*Murray*, 194 Ill. App. 3d at 658, quoting *People v. Palmer* (1963), 27 Ill. 2d 311, 314, 189 N.E.2d 265.) The trial court's questions at issue with regard to Robinson concerned the authenticity of his affidavit which Robinson revealed was executed at defense counsel's office. The court questioned Neeley on the issue of police impropriety based on her statements that Officer Strain failed to inventory $8,000 taken from her during a previous arrest. Not only do these questions appear proper in light of the testimony, but defendant has failed to show any resulting prejudice. (See *People v. Batchelor* (1990), 202 Ill. App. 3d 316, 328, 559 N.E.2d 948 (trial court properly questioned witness to clarify contradiction in his testimony).) Nor does the record support a finding of prejudice to defendant since the court permitted defense counsel to conduct redirect examinations for both witnesses to clarify any disputed issues and, after the redirect, the court asked defense counsel if he wished to add anything further.

Defendant has also failed to demonstrate any prejudice arising from the court's characterization of the testimony as "ludicrous." It is the function of the trial court to determine the credibility of witnesses (*People v. Nitz* (1991), 143 Ill. 2d 82, 104, 572 N.E.2d 895), especially in the context of a *Franks* hearing when the court is expected to consider all the evidence in determining the validity of the warrant affidavit.

Defendant contends the prosecutor's statements on rebuttal, allegedly charging defense counsel with lying and minimizing the impeachment value of the police reports, denied him a fair trial. However, since defense counsel only objected to one of the statements at issue, any error is waived. (*People v. Smith* (1990), 199 Ill. App. 3d 839, 855, 557 N.E.2d 596.) Notwithstanding waiver, the record discloses no error.

Prosecutors are allowed wide latitude in closing argument, and the propriety of their comments is within the trial court's discretion. (*People v. Graca* (1991), 220 Ill. App. 3d 214, 221, 580 N.E.2d 1328; *People v. Phillips* (1989), 186 Ill. App. 3d 668, 682, 542 N.E.2d 814.) The prosecution may base its closing argument on the evidence presented or reasonable inferences therefrom, respond to comments by defense counsel which invite or provoke response, denounce the activities of defendant and highlight inconsistencies in defendant's argument. (*Graca*, 220 Ill. App. 3d at 221.) The trial court cures a

statement made during closing argument which allegedly prejudiced the defendant by instructing the jury that closing arguments are not evidence and to disregard any argument not based on the evidence. (*Graca*, 220 Ill. App. 3d at 221, citing *People v. Scott* (1990), 194 Ill. App. 3d 634, 645, 551 N.E.2d 288.) To merit reversal, a prosecutor's improper comments must be of "substantial magnitude" when viewed in the context of the entire argument and record. (*Graca*, 220 Ill. App. 3d at 221, citing *Scott*, 194 Ill. App. 3d at 645.) If the improper comments did not constitute a material factor in the defendant's conviction, the verdict will not be disturbed. *Graca*, 220 Ill. App. 3d at 221, citing *Scott*, 194 Ill. App. 3d at 645.

■ Defendant contends that the prosecutor's remarks characterizing the police reports as a "summary" of the evidence rather than concrete evidence, such as guns and narcotics, misstated the evidence and challenged the veracity of defense counsel. In part, the prosecutor stated:

"You see the guns, the narcotics. That is evidence. It is not the [police] reports, ladies and gentlemen. Reports are only a summary. This report written by Officer Strain it is a summary."

The record supports the propriety of the prosecutor's statements for several reasons. First, the prosecutor's statements correctly represent the law. "In general, police reports may be used for impeachment purposes but are inadmissible as substantive evidence." *People v. Gagliani* (1991), 210 Ill. App. 3d 617, 629, 569 N.E.2d 534, citing *People v. Johnson* (1982), 110 Ill. App. 3d 965, 969, 443 N.E.2d 235; *People v. Banasik* (1981), 93 Ill. App. 3d 612, 616, 417 N.E.2d 790.

The statements also represent proper commentary upon Officer Weston's testimony that the police reports contained summaries of defendant's statements.

Further, these statements properly responded to defense counsel's several remarks about the contents of the police reports. Specifically, defense counsel attempted to cast doubt on the police officers' veracity by arguing that the officers' testimony differed from the information contained in the police reports, and that the police reports lacked corroboration. "Where defense counsel provokes a response, defendant cannot complain that the State's reply denied him a fair trial." *People v. Lyles* (1985), 106 Ill. 2d 373, 390, 478 N.E.2d 291; see *People v. Christiansen* (1987), 116 Ill. 2d 96, 125, 506 N.E.2d 1253.

Nor did the prosecutor's closing argument improperly challenge defense counsel's veracity. Defense counsel extensively argued about the lack of corroboration between the reports and the police officers' testimony. The prosecution's closing argument attempted to show the lack of an evidentiary basis for defense counsel's argument. (See

*People v. Cooper* (1985), 136 Ill. App. 3d 517, 483 N.E.2d 309.) Moreover, defendant has failed to show or even allege that the verdict would have been different absent the prosecutor's remarks. See *People v. Williams* (1992), 228 Ill. App. 3d 981, 1005, 593 N.E.2d 968.

Defendant's final argument challenges the trial court's admission of Officer Strain's preliminary hearing testimony into evidence where Strain died before trial.

"A witness' previous testimony may be admitted into evidence at trial, as an exception to the hearsay rule, if the witness has become unavailable and the current opponent of the evidence had the opportunity to cross-examine the witness at an earlier hearing." (*People v. McCambry* (1991), 218 Ill. App. 3d 996, 1000, 1001, 578 N.E.2d 1224, quoting *Ohio v. Roberts* (1980), 448 U.S. 56, 65-66, 65 L. Ed. 2d 597, 607-08, 100 S. Ct. 2531, 2538-39.) The question is not whether there was an opportunity for full and complete cross-examination; rather, whether there was adequate indicia of the statement's reliability. *McCambry*, 218 Ill. App. 3d at 1000.

■ The record supports the court's determination that Strain's preliminary hearing testimony was reliable enough to be admitted at trial since he testified under oath and defendant had an adequate opportunity to cross-examine Strain at that time. In fact, the record shows that defense counsel's cross-examination was full and complete. Essentially, defense counsel's questions targeted the issue of Strain's credibility, emphasizing the inconsistencies between Strain's testimony and the police report. Defense counsel also probed the issues of Strain's relationship with defendant, and whether or not the police established defendant's ownership of the recovered contraband (*i.e.*, whether the police recovered proof of defendant's residency at 12001 South Prairie). Besides, the court provided defense counsel with the opportunity to proffer additional questions at the end of Strain's cross-examination, which counsel declined.

We reject defendant's argument that he suffered prejudice because he was unable to cross-examine Strain about the "crucial manner of how Strain obtained the warrant" based on his conversation with the informant. Had Strain been on the witness stand at trial, it is doubtful that the court would have allowed this line of cross-examination on grounds of hearsay. See *People v. Rivera* (1989), 182 Ill. App. 3d 33, 537 N.E.2d 924.

Moreover, we must recall that defendant argued prior to trial that testimony detailing the complaint for the search warrant was inadmissible as hearsay. In response to defendant's argument, the court restricted the prosecution witnesses' testimony to the subject of police procedure to obtain a warrant, rather than the veracity of the

statements contained in the warrant. If such evidence amounted to hearsay, as defendant claimed, it was inadmissible so that the trial court properly denied defendant's later request for admission.

For the foregoing reasons, we affirm defendant's conviction and sentence.

Affirmed.

TULLY, P.J., and CERDA, J., concur.