## A06A0931. DICKSON v. THE STATE.
(636 SE2d 721)

ADAMS, Judge.

Richard Bernard Dickson was tried on one count of malice murder and one count of felony murder for the stabbing death of his brother Barry. He was found not guilty of malice murder but guilty of aggravated assault as a lesser included offense of felony murder. He was sentenced to ten years in prison. On appeal, he contends the trial court improperly allowed into evidence his father's pre-trial statement to an investigator and improperly prohibited him from introducing evidence suggesting that his brother had personal problems, possibly including the use of illegal drugs.

The evidence shows that on January 9, 2005, Dickson was involved in a physical altercation with his older brother, whom he admittedly stabbed. The fight began inside their parents' home, briefly stopped when the brothers were separated, and ended when Dickson got a knife from the kitchen and went outside on the deck and stabbed his brother. Grady Dickson, the father of both men, was present during the latter stages of the altercation. Barry died as a result of the stabbing.

1. On the day of the crime, investigator Harold Bramlett interviewed Grady at his home and recorded the interview on audiotape. Grady later testified at Dickson's bond hearing.[1] Sometime thereafter, but two months prior to Dickson's trial, Grady died. Prior to trial, Dickson moved in limine to prevent the State from playing the audiotape of Investigator Bramlett's interview with Grady. The trial court denied the motion because, it reasoned, Dickson had a prior opportunity to cross-examine Grady at the bond hearing. Dickson contends the trial court erred.

The United States Supreme Court has held that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U. S. 36, 68 (V) (C) (124 SC 1354, 158 LE2d 177) (2004). Grady's statement to the investigator is "testimonial" for the purposes of this rule. See id. at 51-52; *Porter v. State*, 278 Ga. 694, 696 (3) (606 SE2d 240) (2004); *Brawner v. State*, 278 Ga. 316, 318 (2) (602 SE2d 612) (2004). The next

---

[1] At the bond hearing, Dickson called his father as a witness and asked him whether he or his wife would feel threatened if Dickson were granted bail. The State then questioned Grady concerning the specific circumstances of the stabbing. Upon redirect, Dickson asked Grady about conditions for Dickson's possible bail and Dickson's ability to pay for an alcohol monitoring device. The State then called Investigator Bramlett, who testified about the details of his interview with Grady. Dickson's counsel then cross-examined Bramlett regarding some of the facts given by Grady, but did not recall Grady for further questioning. Ultimately, Dickson was granted bond.

question is whether, at his own bond hearing, Dickson had a meaningful opportunity to cross-examine his father regarding his father's statement to the investigator.

In order "to insure that the party against whom the testimony is later offered had an adequate opportunity to cross-examine the witness at the previous proceeding," the prior hearing must have addressed "substantially the same issues" as those presented at trial. *Craft v. State*, 154 Ga. App. 682, 683 (1) (269 SE2d 490) (1980). In *Craft*, this Court held that the trial court correctly refused to allow the defendant to introduce his sister's testimony from his own bond hearing because the State did not have an adequate opportunity to cross-examine her at that time regarding the merits of the allegations against the defendant. Id. The court held that while the State "had an opportunity . . . to cross-examine the witness . . . , the opportunity was not adequate in view of the limited scope of inquiry pursued at the bond hearing." Id. at 683-684. This ruling was based on the premise that at a bond hearing "the court does not pass on the merits of the case . . . [but rather], the question before the judge is whether the appearance of the accused for trial may be reasonably assured." Id. at 683. The rule in *Craft* dictates the conclusion in this case: that Dickson did not have an adequate opportunity to cross-examine his father at the bond hearing regarding his father's statement to the investigator because the focus of the bond hearing was whether to allow the defendant to be released on bond, not whether the criminal allegations were supported.

The State contends that changes subsequent to *Craft* to the standard for determining whether to grant bond have affected the decision in *Craft*. Whereas the standard at the time of *Craft* was primarily based on the trial court's discretion, relevant to this case it is now based on the four-part "significant risk" test found in OCGA § 17-6-1 (e).[2] See also *Lane v. State*, 247 Ga. 387 (276 SE2d 644) (1981); Ga. L. 1982, p. 910, § 1. The State argues that the significant risk test is so akin to the issues presented at the defendant's trial that parties involved in the bond hearing can be seen as having had a meaningful opportunity to cross-examine on all trial issues. We disagree.

---

[2] A court shall be authorized to release a person on bail if the court finds that the person:
(1) Poses no significant risk of fleeing from the jurisdiction of the court or failing to appear in court when required;
(2) Poses no significant threat or danger to any person, to the community, or to any property in the community;
(3) Poses no significant risk of committing any felony pending trial; and
(4) Poses no significant risk of intimidating witnesses or otherwise obstructing the administration of justice. . . .

Although there may be some overlap, the determination of whether there is evidence to show beyond a reasonable doubt that the defendant committed the alleged crimes is significantly more demanding and of a different focus than determining whether there is a significant risk that the defendant will flee, harm another, commit another felony, or intimidate witnesses pending trial. The reasonable doubt standard and the significant risk standard cannot be equated; and determining whether a specific crime was committed reaches different issues than determining the possibility of future bad conduct by the defendant. We see no need to belabor the point. "[T]he principal evil at which the Confrontation Clause was directed was the [English and continental] civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Crawford v. Washington*, 541 U. S. at 50 (III) (A). Following *Craft*, we hold that Dickson did not have an adequate opportunity at the bond hearing to cross-examine his father regarding his father's statement to the investigator, and therefore the trial court erred by allowing the statement.

We must next assess whether the error was harmless.

> A constitutional error is harmless, if there is no "reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut*, 375 U. S. 85, 86-87 (84 SC 229, 11 LE2d 171) (1963). The test is not "whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of," id., but whether the evidence complained of may have influenced the fact-finder's deliberations, see *Harrington v. California*, 395 U. S. 250, 254 (89 SC 1726[, 23 LE2d 284]) (1969).

*Harryman v. Estelle*, 597 F2d 927, 929 (5th Cir. 1979). "Overwhelming evidence of the defendant's guilt can negate the possibility that the constitutional error contributed to the conviction. [Cit.]" *Vaughn v. State*, 248 Ga. 127, 131-132 (281 SE2d 594) (1981).

Here, Grady's statement to the police included his first-hand account of the altercation between the two brothers, including his observations about the circumstances under which Dickson approached his brother for the fatal blow and Grady's attempt to get in between them. We conclude that his statement may have influenced the jury and that it may have undermined Dickson's claim of self-defense. See *Crawford*, 541 U. S. at 65. Indeed, before rendering the verdict, the jury was granted a request to hear Grady's audiotaped

interview for a second time. Dickson's conviction must be reversed. Because the remaining issue could affect any possible retrial, we will address it now.

2. At trial, Dickson asserted self-defense, and he sought to introduce evidence to suggest that Barry was high on drugs at the time of the altercation, including that Barry had a pipe used for smoking drugs, that Barry had recently been selling his possessions, and that Barry had exhibited strange behavior in the weeks before the stabbing. The trial judge sustained the State's objections to this evidence, calling the inferences to be derived from the evidence "innuendos, and speculation." See *Crozier v. State*, 263 Ga. 866, 867 (2) (440 SE2d 635) (1994) ("The trial court has great discretion to determine relevancy and materiality of evidence," but noting that "admission is favored in doubtful cases.") (citation omitted).

We find no error. Without evidence, such as expert testimony, about the effect that possible drug use or Barry's mental state would have had on Barry and a showing of the possible relevance of that effect on the issues raised at trial, the court did not abuse its discretion in prohibiting the evidence. See *Robinson v. State*, 272 Ga. 131, 133 (3) (527 SE2d 845) (2000); *Davidson v. State*, 232 Ga. App. 250, 252 (2) (501 SE2d 510) (1998). Compare *Crowe v. State*, 277 Ga. 513, 514-515 (591 SE2d 829) (2004) (expert testified about the effect of impairment on victim and the victim's driving, which were both relevant to whether victim contributed to accident).

*Judgment reversed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 13, 2006.

*Allen M. Trapp, Jr.*, for appellant.

*Peter J. Skandalakis, District Attorney, Stephen M. Gray, Assistant District Attorney*, for appellee.