SIXTH DIVISION
June 22, 2007

No. 1-05-0995

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from the
                                        )    Circuit Court of
        Plaintiff-Appellee,             )    Cook County
                                        )
    v.                                  )
                                        )
HENRY BROWN,                            )    Honorable
                                        )    Marjorie Laws,
        Defendant-Appellant.            )    Judge Presiding


        JUSTICE McNULTY delivered the opinion of the court:

        This case comes before us for a second time.  The first

appeal resulted in a remand for a new trial.  On retrial a jury

found defendant, Henry Brown, guilty of the aggravated kidnaping

and aggravated battery of Gaddis Johnson.  Defendant now argues

that section 115-10.4 of the Code of Criminal Procedure of 1963

(the Code) (725 ILCS 5/115-10.4 (West 2004)) did not authorize

the introduction into evidence of testimony Johnson gave at

defendant's bond hearing.  We agree with defendant and therefore

we reverse the conviction and again remand for a new trial.

                            BACKGROUND

        On March 8, 1995, two persons came to the apartment Johnson

shared with his sister and her children.  Johnson left with the

two persons.  Johnson returned home two days later.  Burn marks

and other wounds covered much of Johnson's body.  Following

discussions with Johnson, police arrested defendant.  The court

released defendant on a bond of $125,000, conditioned on an order not to contact Johnson or his family.

Prosecutors petitioned for a hearing on violation of bail bond, alleging that defendant contacted Johnson and that defendant possessed heroin. At the hearing, begun on August 9, 1996, Johnson testified in great detail, over a continuing relevancy objection, about the kidnaping and battery. He also swore that defendant contacted him and offered him cash and cocaine in exchange for testimony favorable to defendant.

The court delayed cross-examination of Johnson until August 13, 1996. Defense counsel limited his cross-examination to the testimony regarding defendant's contact with Johnson after defendant's release on bond. When the court excused Johnson, the prosecutor asked, "Judge, is counsel waiving his right to complete a meaningful cross of Mr. Johnson?" The attorneys discussed with the court the ramifications of the question:

> "MR. KUSATZKY [Defense counsel]: *** I believe the State has a theory if Mr. Johnson does not appear at trial, they will be asking of the Court to use a transcript of that hearing ***.
>
> THE COURT: Mr. State's Attorney, do you have any information this witness will not be available for purposes of trial?

1-05-0995

MR. ANDERSON [Prosecutor]:  I don't know whether he'll be available [f]or trial ***.  I believe he will be available at trial. ***

* * *

MR. KUSATZKY:  Your Honor, I just want to be clear, I did not cross examine him on the points of the substantive nature of the allegation ***.

* * *

THE COURT:  *** I won't have this Court have a legal chess game gentlemen, it's not going to happen. I called the witness.  You have an opportunity to examine the witness *** as to all his testimony in this cause.  I don't know whether or not this witness will be available *** and in fact if he isn't, I don't even know whether or not I would allow the testimony to stand ***, but I'm not going to have this legal chess game ***.

***

*** Let me end it right now, recall the witness. You may have an opportunity to examine him."

Defense counsel's subsequent cross-examination of Johnson occupied the next 35 pages of record.

Johnson died in 1997 from causes unrelated to the offense at

-3-

1-05-0995

issue. Defendant's trial began in 1998. The trial court denied defendant's motion to bar use of Johnson's prior testimony at trial. The jury found defendant guilty and the court entered judgment on the verdict.

Defendant appealed, arguing that the court erred by admitting Johnson's testimony into evidence. We analyzed the admissibility of the testimony under the standards enunciated in Ohio v. Roberts, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539 (1990). We said:

"Where there was adequate opportunity to cross-examine the witness at the prior hearing and defense counsel took advantage of that opportunity, the transcript bears sufficient indicia of reliability and affords the trier of fact a satisfactory basis for evaluating the truth of the prior statement. [Citation.] The opportunity to cross-examine is considered adequate and effective only when the motive and focus of the cross-examination at the time of the initial proceeding were the same or similar to that of the subsequent proceeding. People v. Rice, 166 Ill. 2d 35, 41, 651 N.E.2d 1083 (1995).

The motive and focus of the cross-examination at Henry's bond rehearing differed significantly from that

of his trial.  The purpose of the bond rehearing was to determine whether Henry had violated the conditions of his bond by contacting Gaddis.  Although the court improperly expanded the scope of this hearing by permitting the State to question Gaddis extensively about the crime itself, the motive of the defense during cross-examination remained limited to the allegations of Henry's bond violations.  As such, we find that Henry did not have an adequate opportunity to effectively cross-examine Gaddis at the bond rehearing and that the admission of the testimony violated the confrontation clause."  People v. Brown, No. 1-98-1411, slip op. at 9 (2001) (unpublished order under Supreme Court Rule 23).

In a footnote, we added:

"While we are aware of the statutory hearsay exception for deceased witnesses (725 ILCS 5/115-10.4 (West 2000)), we make no comment as to its applicability to this case since neither party raised the issue on appeal."  Brown, No. 1-98-1411, slip op. at 9 n.1.

On remand prosecutors moved for permission to introduce Johnson's testimony into evidence pursuant to section 115-10.4 of

1-05-0995

the Code.  The prosecutor said:

"The testimony of Gaddis Johnson *** is offered as to
the material facts of his kidnaping and torture at the
hand of the defendant and his henchmen.

*** The testimony is more probative on the point
for which it is offered than any evidence that could be
procured since the testimony is that of the victim
himself narrating the events."

The court held:

"There was a cross-examination at the bond
hearing.  I've reviewed the cross-examination of Mr.
Kusatzky of Mr. Johnson.  It's within this Court's
opinion that it was an adequate cross-examination."

The court allowed the prosecutor to read Johnson's testimony to
the jury on retrial.

Johnson's niece testified that on March 8, 1995, she saw
defendant and his wife come to the apartment to talk to Johnson.
She saw a gun in defendant's hand.  She watched as Johnson left
with defendant and defendant's wife.

Johnson's sister testified that after she came home on March
8, defendant called her and told her that he would kill Johnson
unless she repaid defendant the $3,500 that Johnson's brother had
taken from him.  Johnson's sister heard Johnson screaming in the

-6-

background. She received seven or eight calls from defendant that day, along with several calls from defendant's wife.

Timothy Belin admitted that he signed a statement at the police station on March 11, 1995. He testified that police tricked him into signing the statement. He did not tell police or the assistant State's Attorney any of the facts in the statement the assistant State's Attorney wrote out. He signed it without knowing what the attorney had written. The court permitted a prosecutor to read the signed statement into the record.

According to the statement, defendant brought Johnson to a room in a housing project and told another man to put Johnson in a closet with a pit bull. Belin heard Johnson yelling. Defendant directed Johnson to strip and he ordered Belin and others to tape over Johnson's mouth with duct tape, and to use more tape to bind Johnson's hands and feet. Defendant directed another man to burn Johnson. The man got a butter knife and heated it on the stove. He then pressed it against Johnson's bare skin. The man also took a hanger, heated it, and used it to burn Johnson. He burned Johnson numerous times. Another man poured bleach on Johnson's wounds.

In a separate proceeding Belin pled guilty to charges of aggravated kidnaping.

Johnson testified at the bond hearing that defendant and his wife came to Johnson's apartment on March 8, 1995. Johnson considered defendant a close friend of his family, and Johnson had known defendant's wife all her life. Johnson let them into the apartment. Defendant put a pistol to Johnson's stomach and demanded that Johnson accompany him to his van. Defendant asked where was Johnson's brother. Johnson said he did not know. Defendant and his wife took Johnson in their van to a housing project. Defendant told several "moes" to clear the front of the building. Johnson explained that leaders in the Black Peace Stones gang, including defendant, called other gang members "moes" so they would not need to use any names.

Johnson recognized Belin and another man amongst the moes who marched Johnson into the building then into an apartment and into a closet. Defendant ordered a man to put a pit bull in the closet with Johnson. The dog bit Johnson's wrist. The men including Belin stripped Johnson on defendant's orders. They taped Johnson's ankles together and bound his arms. Defendant ordered the men to put knives and a hanger on the stove. Belin burned Johnson with an iron. Johnson heard defendant call Johnson's sister and tell her that he would torture and kill Johnson unless she came up with the money. While defendant was on the phone he ordered one of the men to burn Johnson with a

heated knife. Johnson hollered when they burned him.

After more burns and more calls defendant ordered Belin to pour salt on Johnson's wounds. Belin also poured bleach on the wounds. Later they unbound Johnson and allowed him to put his clothes back on. Defendant ordered one of the men to put a duffel bag over Johnson's head. The men also rebound Johnson with duct tape. They took Johnson to the van and then to an apartment in a different building. When Johnson answered that he still did not know where his brother had gone, defendant ordered the men to take Johnson by some railroad tracks and shoot him in the head and the heart. When they stopped at a fast food place on the way, Johnson slid out of the car and ran down nearby el tracks. A few blocks away he found a phone from which he called his family.

The jury found defendant guilty of aggravated battery and aggravated kidnaping. The court sentenced defendant, as a habitual criminal, to natural life in prison. Defendant filed a timely appeal.

### ANALYSIS

Defendant raises only one issue on appeal. He contends that the trial court erred again by permitting prosecutors to read to the jury the testimony Johnson gave at the bond hearing. We review the trial court's decision for abuse of discretion.

<u>People v. Hamilton</u>, 364 Ill. App. 3d 721, 723 (2006).

Defendant has a constitutional right to confront the witnesses against him. <u>Crawford v. Washington</u>, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). The constitution permits use of a witness's testimonial statement against a defendant only if (1) the declarant cannot appear at trial and (2) the defendant had an opportunity to cross-examine the witness when the witness made the statement. <u>Crawford</u>, 541 U.S. at 60, 158 L. Ed. 2d at 198, 124 S. Ct. at 1369. Most courts have required that the cross-examiner must have had the same motive at the time of cross-examination as he would have for cross-examination of the witness at trial. See <u>Willingham v. State</u>, 279 Ga. 886, 887, 622 S.E.2d 343, 345 (2005) (statute required similar motive for initial cross-examination to make prior testimony admissible); <u>State v. Summers</u>, 159 S.W.3d 586, 597 (Tenn. Crim. App. 2004) (court rule); <u>Mercer v. United States</u>, 864 A.2d 110, 115-16 (D.C. 2004); <u>State v. Henderson</u>, 139 N.M. 595, 598, 136 P.3d 1005, 1008 (2006); <u>Farmer v. State</u>, 124 P.3d 699, 703 (Wyo. 2005); <u>United States v. Carson</u>, 455 F.3d 336, 378 (C.A.D.C. 2006).

In <u>People v. Fry</u>, 92 P.3d 970 (Colo. 2004), the trial court permitted the prosecution to introduce at trial testimony from a preliminary hearing. The Colorado Supreme Court found the testimony inadmissible. The court explained:

"[C]ross-examination at the preliminary hearing would not have provided the same opportunity for exploration into the case. [Citation.]

'The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial.' [Barber v. Page, 390 U.S. 719, 725, 20 L. Ed. 2d 255, 260, 88 S. Ct. 1318, 1322 (1968).]

* * *

*** Preliminary hearings are limited to a determination of probable cause so that they do not become mini-trials. Were we to allow extensive cross-examination by defense counsel so as to prevent any Confrontation Clause violations at trial if a witness were to become unavailable, we would turn the preliminary hearing in every case into a much longer

and more burdensome process for all parties involved." Fry, 92 P.3d at 978.

Apart from the constitutional constraints, Johnson's statements must meet the constraints of section 115-10.4 of the Code. That section provides:

"(a) A statement not specifically covered by any other hearsay exception but having equivalent circumstantial guarantees of trustworthiness is not excluded by the hearsay rule if the declarant is deceased and if the court determines that:

(1) the statement is offered as evidence of a material fact; and

(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(3) the general purposes of this Section and the interests of justice will best be served by admission of the statement into evidence.

* * *

(d) Any prior statement that is sought to be admitted under this Section must have been made by the

-12-

declarant under oath at a trial, hearing, or other proceeding." 725 ILCS 5/115-10.4 (West 2004).

Illinois courts have developed the interpretation of "circumstantial guarantees of trustworthiness" in the context of cases concerning the use of hearsay at trial. To determine the trustworthiness of a statement, courts have considered several factors, including the adequacy of the defendant's opportunity to cross-examine the declarant. See People v. Bueno, 358 Ill. App. 3d 143, 160 (2005); People v. Brown, 363 Ill. App. 3d 838, 849 (2005). Our supreme court held:

"For an opportunity to cross-examine to be considered meaningful, and therefore adequate and effective, the motive and focus of the cross-examination at the time of the initial proceeding must be the same or similar to that which guides the cross-examination during the subsequent proceeding." People v. Rice, 166 Ill. 2d 35, 41 (1995).

The court in Rice did not report any restriction on the actual cross-examination of the witness at the preliminary hearing. Nonetheless, our supreme court affirmed the trial court's decision to bar use of that witness's testimony because the motive for the cross-examination at the preliminary hearing differed too much from the motive for cross-examination at trial.

As we held in our order on the initial appeal here, the issues at the bond hearing differed significantly from the issues at trial. Persuasive precedent from other jurisdictions holds that issues at the bond hearings in those cases differed too much from the issues at trial for the admission into evidence of testimony from the bond hearings. Dickson v. State, 281 Ga. App. 539, 540, 636 S.E.2d 721, 723 (2006); People v. Vera, 153 Mich. App. 411, 416, 395 N.W.2d 339, 341 (1986).

Here, at the bond hearing the court needed to decide whether the prosecutors proved that defendant had contacted Johnson in violation of the conditions of the bond and whether defendant possessed heroin while free on bond. At trial the jury needed to decide whether prosecutors proved beyond a reasonable doubt that defendant kidnaped Johnson and committed aggravated battery against him. The issues at the two hearings have little in common.

The prosecution argues that the judge changed the motive for the cross-examination at the bond hearing. The judge told defense counsel that counsel could not reserve for trial the cross-examination of Johnson on testimony about the aggravated battery and aggravated kidnaping. After the ruling counsel questioned Johnson about the offenses. The extended cross-examination uses 35 pages of the trial record.

In effect the trial court sought to change the character of the bond hearing. As defense counsel pointed out at the bond hearing, the prosecutors questioned Johnson as though they expected him not to appear at trial. The trial court permitted the prosecution to proceed as though the bond hearing became an evidence deposition, which would preserve for trial Johnson's testimony on issues that had no bearing on the allegations that defendant violated the conditions of his bond. See Suffolk v. Chapman, 31 Ill. 2d 551, 559 (1964).

Supreme Court Rule 217 prescribes proper procedures for evidence depositions. 134 Ill. 2d R. 217. The rule requires 21 days' advance notice. The trial court and the prosecution here did not provide the requisite notice. Moreover, the court should allow an evidence deposition only when the party seeking to preserve the testimony shows certain specified grounds for the exceptional procedure. See Adams v. Northern Illinois Gas Co., 333 Ill. App. 3d 215, 224 (2002), *aff'd*, 211 Ill. 2d 32 (2004). The prosecution showed no such grounds here.

The attempt to convert the bond hearing to an evidentiary deposition did not change defense counsel's basic motivation at the hearing. The court needed to decide only whether defendant contacted Johnson in violation of the conditions of the bond. While defense counsel had reason to attack that aspect of

Johnson's testimony, he had no reason to reveal his trial strategy for impeaching Johnson's testimony concerning the kidnaping and battery. We hold that defense counsel did not have a similar motive for cross-examining Johnson at the bond hearing as he would have had for cross-examination at trial. Therefore Johnson's testimony about the kidnaping and battery from the bond hearing lacked the circumstantial guarantees of trustworthiness needed to make the testimony admissible under section 115-10.4

Next, the prosecution argues that the trial court committed only harmless error because Johnson's testimony had no effect on the result of the trial. Before trial the prosecutor told the court that Johnson's testimony was "more probative *** than any evidence" otherwise available on the issue of defendant's role in the kidnaping and battery. The prosecutor relied on Johnson's testimony in arguments to the jury. While Belin's written statement corroborated much of Johnson's account, Belin retracted the statement at trial. The jury might have found Belin's trial testimony more credible than his written statement. We find a reasonable possibility that the jury might have reached different verdicts in the absence of Johnson's testimony. See People v. Johnson, 296 Ill. App. 3d 53, 66 (1998).

At the bond hearing defendant cross-examined Johnson on his testimony concerning the alleged bond violation. Defendant did

1-05-0995

not have a motive similar to his motive at trial for cross-examining Johnson's testimony concerning the kidnaping and battery. Therefore, Johnson's testimony on those issues lacked the circumstantial guarantees of trustworthiness that section 115-10.4 of the Code requires. Because the testimony has more probative force than any other evidence offered on the extent of defendant's involvement in the kidnaping and battery, we cannot find the error harmless. Defendant does not contest the sufficiency of the evidence. Therefore we reverse the convictions and remand for a new trial.

Reversed and remanded.

FITZGERALD SMITH, P.J., and JOSEPH GORDON, J., concur.