# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Starks*, 2012 IL App (2d) 110273

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BENNIE STARKS, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-11-0273 |
| Filed | February 14, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant was granted a new trial on charges of aggravated criminal sexual assault, attempted aggravated criminal sexual assault and aggravated battery based on DNA test results excluding defendant as the source of the semen found on the victim and defendant then filed a motion *in limine* to bar the admission of the prior testimony of the now-deceased victim, the trial court's order granting defendant's motion was affirmed, since defendant did not have an adequate opportunity to cross-examine the victim, he was provided incorrect serology test results, he was unaware of the exculpatory DNA tests, and due to the State's "offensive use of the rape shield statute," he was improperly barred from asking the victim about her prior sexual conduct. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 86-CF-106; the Hon. John T. Phillips, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Waller, State's Attorney, of Waukegan (Lawrence M. Bauer and Richard S. London, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Ronald S. Safer, Theresa M. Williams, and Brooke M. Schaefer, all of Schiff Hardin LLP, and Lauren F. Kaeseberg, both of Chicago, Jed H. Stone, of Stone & Associates, of Waukegan, Barry C. Scheck and Vanessa Potkin, both of Innocence Project, of New York, New York, and John Curnyn, of Law Office of John Curnyn, of Evanston, for appellee.

Panel

JUSTICE McLAREN delivered the judgment of the court, with opinion.

Justices Burke and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1    The State appeals the trial court's grant of defendant's motion *in limine*, barring the admission of the prior testimony of the now-deceased complainant. On appeal, the State argues that the trial court erred by granting defendant's motion *in limine* because: (1) complainant's prior sexual contacts would not be relevant at the new trial; (2) at the prior trial, defendant had the opportunity to cross-examine complainant on every issue except her prior sexual contacts; and (3) defendant would not suffer prejudice as a result of not being able to cross-examine complainant regarding her prior sexual contacts. For the reasons set forth below, we affirm.

¶ 2                                I. BACKGROUND

¶ 3    This matter is before this court for the third time. Other issues were addressed by this court in our decision on direct appeal in *People v. Starks* (*Starks I*), No. 2-86-1021 (1988) (unpublished order under Supreme Court Rule 23). In the second appeal, we reversed the trial court's dismissal of defendant's postconviction petition and remanded the cause for a new trial. *People v. Starks* (*Starks II*), 365 Ill. App. 3d 592, 601 (2006). We will provide only those facts necessary for an understanding of the issues raised on appeal. Further, we will provide factual details as necessary in the analysis portion of this opinion.

¶ 4    At defendant's first trial in 1986, the trial court granted the State's motion *in limine* barring defendant from introducing evidence regarding complainant's prior sexual activity.

¶ 5    Complainant testified that on the evening of January 18, 1986, defendant grabbed her neck, threw her to the ground, repeatedly punched her face, and pulled her, feet first, down

a ravine, while he hit her all over her body. At the bottom of the ravine, defendant took off complainant's underwear and put his penis in her vagina. Complainant also testified that defendant did not take off any of her clothing when he sexually assaulted her. Complainant testified that she believed that defendant ejaculated in her. During the attack, defendant bit her on the shoulder and she tore off defendant's watch.

¶ 6 The State's forensic serologist, Sharon Thomas-Boyd, testified that test results indicated the presence of semen on complainant's underwear that she wore during the alleged incident. Further, semen was present on the vaginal swab collected from complainant. Thomas-Boyd testified that, based on samples collected from defendant, she could not exclude him as a source of the semen.

¶ 7 Illinois Department of Public Aid worker Blanche Gonzalez testified that she spoke with complainant shortly after the alleged attack. Complainant told Gonzalez that she had accused defendant of having sexual intercourse with her, but that it was not true. Gonzalez testified that complainant told Gonzalez that she told the police that she was sexually assaulted "because he was going to pay for beating her up." Complainant also told Gonzalez that "[h]e didn't want to have any–didn't want to rape [complainant], he wanted oral sex."

¶ 8 Waukegan police officer William Genell testified that when he searched the ravine the morning after the alleged attack he found underwear, a black trench coat, gloves, a scarf, a watch, and a watchband.

¶ 9 The sleeve of the black trench coat found at the ravine contained a laundry tag from Sinclair Cleaners. The owner of Sinclair Cleaners testified that his records indicated that the coat had been brought in by an individual named Starks. Defendant stipulated to Sinclair's identification of him in court as the man who brought the coat in for cleaning.

¶ 10 Dentist and forensic odontologist Russell Schneider testified that he examined a large bite mark on complainant's shoulder and compared it to photos, X rays, and a model of defendant's teeth and bite. After comparing defendant's bite to the photo of the bite mark on complainant's shoulder, Schneider opined that defendant bit complainant.

¶ 11 The parties stipulated that, if called to testify, Waukegan patrolman Martinez would testify that complainant told him in Spanish that on the evening of the incident she had not been raped but had been struck with a metal pipe.

¶ 12 Waukegan detective Sergeant William Biang testified that defendant told him that, as he walked home from the Genesee Inn on the night of the incident, he was robbed by a black male and an Hispanic male. The men took his coat, gloves, and wristwatch and $80. Defendant told Sergeant Biang that he previously did not tell the police about the robbery because he did not think they would help him. Defendant did not tell his mother because she was sick and he did not want to upset her. When Sergeant Biang showed defendant the coat, defendant said it was his.

¶ 13 The jury found defendant guilty of two counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, ¶¶ 12-14(a)(2), (a)(5)), one count of attempted aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, ¶ 8-4(a)), one count of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, ¶ 12-4(b)(10)), and one count of unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, ¶ 10-3). The trial court vacated the unlawful restraint conviction and imposed

concurrent extended terms of 60 years' imprisonment for the two aggravated criminal sexual assault convictions, 30 years' imprisonment for the attempted aggravated criminal sexual assault conviction, and 10 years' imprisonment for the aggravated battery conviction.

¶ 14	On appeal, in *Starks I*, this court vacated the conviction and sentence for one count of aggravated criminal sexual assault. *Starks I*, slip order at 26. Further, we reduced defendant's sentence for attempted aggravated criminal sexual assault to 15 years and his sentence for aggravated battery to 5 years. *Starks I*, slip order at 26.

¶ 15	In *Starks II*, we considered the trial court's dismissal of defendant's postconviction petition seeking a new trial based on DNA tests that excluded him as the source of the semen obtained from complainant's vaginal swab and underwear. *Starks II*, 365 Ill. App. 3d at 596. In addition, we also considered that, based on the DNA tests, the 1986 serology test results were contrary to the trial testimony of the State's serology expert; the serology results actually excluded defendant as the source of the semen. *Starks II*, 365 Ill. App. 3d at 596. We held that a new trial was required due to the DNA test results excluding defendant as the source of the semen, the State's serologist's incorrect testimony, and the improper use of the rape shield statute. *Starks II*, 365 Ill. App. 3d at 599, 600.

¶ 16	Prior to the commencement of the retrial, complainant died. Defendant filed a motion *in limine* seeking to preclude the admission of complainant's prior testimony, alleging a violation of his right of confrontation under the sixth amendment to the United States Constitution (U.S. Const., amend. VI).

¶ 17	In ruling on defendant's motion, the trial court stated:

"I have carefully considered this issue in accordance with the Constitution's confrontation requirements and exceptions. The former testimony of [complainant] does not meet these requirements in light of the Second District's opinion in this particular case.

I have considered also the statutory exception created by 725 ILCS 5/115-10.4; admissibility of prior statements when witness deceased. I cannot find it admissible under this statutory provision either because the Court can't find that the third required determination can be met by the State; and that is the one that the general purposes of that statutory section and the interests of justice would be best served by admission of the statement into evidence.

I also considered the new Illinois Rules of Evidence that just became effective; particularly Rule 804(b)(1), former testimony, and cannot find the statement admissible thereunder, again, there was not an opportunity in the former direct, cross, or redirect examination of [complainant] to develop the testimony which the Appellate Court determined would be admissible at retrial."

¶ 18	The trial court granted defendant's motion. The State filed a certificate of impairment and timely appealed.

¶ 19	                                             II. ANALYSIS

¶ 20	Before turning to the merits of the State's appeal, we must address the State's contention

that the applicable standard of review in this case is *de novo*. As a general rule, a trial court's ruling on a motion *in limine* regarding the introduction or exclusion of evidence is reviewed under an abuse of discretion standard. *People v. Kirchner*, 194 Ill. 2d 502, 539 (2000). The State argues that the trial court exercised no discretion because it considered itself bound by the "law of the case." The State cites *In re Christopher K.*, 217 Ill. 2d 348, 363-64 (2005), to support its argument. However, *Christopher K.* is not applicable to this case, because it did not involve review of a trial court's decision on an evidentiary issue. In *Christopher K.*, the supreme court applied *de novo* review to a question of law, *i.e.*, whether it should apply the law-of-the-case doctrine to an issue based on a statute. *Christopher K.*, 217 Ill. 2d at 363-64. In this case, the trial court decided an evidentiary issue and not a question of law. Further, although the trial court referred to this court's prior decision, the record indicates that it clearly exercised its own discretion in this matter. The trial court considered that defendant cannot "obtain any opportunity whatsoever at retrial" to adequately or amply cross-examine complainant, because her death "forecloses this." The trial court also considered that defendant's opportunity to cross-examine "cannot be recreated artificially by requiring parties to stipulate to possible snippets in police reports or elsewhere." Thus, the trial court used its own judgment in rendering its decision. Accordingly, absent an abuse of discretion, we will not disturb the trial court's decision to grant defendant's motion *in limine*. See *People v. Hansen*, 327 Ill. App. 3d 1012, 1017 (2002). A trial court has abused its discretion only when its decision is arbitrary, fanciful, or unreasonable or when no reasonable person would take the court's view. *People v. Baez*, 241 Ill. 2d 44, 106 (2011).

¶ 21 We now address the State's main argument that the trial court erred by granting defendant's motion *in limine*, barring complainant's prior testimony. The State argues that complainant's prior sexual contacts would not be relevant at the new trial. Defendant argues that the confrontation clause of the sixth amendment to the United States Constitution (U.S. Const., amend. VI) required the trial court to bar complainant's prior testimony.

¶ 22 We recognize that the trial court based its decision, in part, on the confrontation clause. However, we must consider nonconstitutional issues first and consider constitutional issues only if necessary to the resolution of this case. *People v. Melchor*, 226 Ill. 2d 24, 34-35 (2007). In this case, the trial court also based its decision on two nonconstitutional provisions: section 115-10.4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.4 (West 2010)) and Rule 804(b)(1) of the Illinois Rules of Evidence (Ill. R. Evid. 804(b)(1) (eff. Jan. 1, 2011)).

¶ 23 Section 115-10.4 of the Code contains an exception to the hearsay rule for the admission of a prior statement of a deceased witness. This section provides, in pertinent part:

"(a) A statement not specifically covered by any other hearsay exception but having equivalent circumstantial guarantees of trustworthiness is not excluded by the hearsay rule if the declarant is deceased and if the court determines that:

(1) the statement is offered as evidence of a material fact; and

(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(3) the general purposes of this Section and the interests of justice will best be

-5-

served by admission of the statement into evidence.

\* \* \*

(d) Any prior statement that is sought to be admitted under this Section must have been made by the declarant under oath at trial, hearing, or other proceeding and been subject to cross-examination by the adverse party." 725 ILCS 5/115-10.4 (West 2010).

Therefore, as this court has previously explained, with respect to a deceased person's prior testimony, section 115-10.4 requires a court to consider: (1) materiality; (2) probative value; (3) trustworthiness of the statement; (4) interests of justice; and (5) prior opportunity for cross-examination. *People v. Melchor*, 376 Ill. App. 3d 444, 450 (2007).

¶ 24    Illinois Rule of Evidence 804(b)(1) provides:

"(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former Testimony. Testimony given as a witness (A) at another hearing of the same or a different proceeding, or in an evidence deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, *had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.*" (Emphasis added.) Ill. R. Evid. 804(b)(1) (eff. Jan. 1, 2011).

¶ 25    The Illinois Supreme Court has stated that prior opportunity to cross-examine an unavailable witness must have been "meaningful," "effective," and "ample." (Internal quotation marks omitted.) *People v. Sutherland*, 223 Ill. 2d 187, 273 (2006). The court explained:

" 'For an opportunity to cross-examine to be considered meaningful, and therefore adequate and effective, the motive and focus of the cross-examination at the time of the initial proceeding must be the same or similar to that which guides the cross-examination during the subsequent proceeding.' " *Sutherland*, 223 Ill. 2d at 273 (quoting *People v. Rice*, 166 Ill. 2d 35, 41 (1995)).

In *Rice*, the supreme court did not state whether there were restrictions during the prior cross-examination of the witness. Regardless, the supreme court affirmed the trial court's decision to bar the witness's prior testimony because the issues, purpose, and motive for initially cross-examining the witness, as compared to those that would guide the second cross-examination, were too dissimilar. *Rice*, 166 Ill. 2d at 41-42.

¶ 26    Further, in *People v. McCambry*, 218 Ill. App. 3d 996 (1991), the trial court granted the State's motion to admit the complainant's preliminary hearing testimony into evidence during the defendant's trial. *McCambry*, 218 Ill. App. 3d at 999. During the preliminary hearing, the complainant testified that the defendant robbed and beat him. *McCambry*, 218 Ill. App. 3d at 998. During the trial, the State presented evidence that the unavailable complainant had identified the defendant during a police lineup. *McCambry*, 218 Ill. App. 3d at 999. During the preliminary hearing, defense counsel did not know about the " 'suggestive nature' " of the lineup because discovery was not allowed before a preliminary hearing and cross-examination was limited by the scope of direct examination. *McCambry*,

218 Ill. App. 3d at 1001. On appeal, the appellate court held that the trial court erred by admitting the unavailable complainant's prior testimony, because the defendant did not have an adequate opportunity to cross-examine the complainant. *McCambry*, 218 Ill. App. 3d at 1001.

¶ 27     In addition, if the motives for cross-examination are not similar, the prior testimony lacks the circumstantial guarantees of trustworthiness required by section 115-10.4 of the Code. *People v. Brown*, 374 Ill. App. 3d 726, 734-35 (2007). In *Brown*, the complainant testified during a bond revocation hearing and was cross-examined by the defendant. *Brown*, 374 Ill. App. 3d at 729. Before trial the complainant died, and the trial court allowed the prosecutor to read the complainant's testimony into evidence during the defendant's trial. *Brown*, 374 Ill. App. 3d at 728-29. The defendant was found guilty of aggravated battery and aggravated kidnaping. *Brown*, 374 Ill. App. 3d at 731. The appellate court reversed, holding:

> "Defendant did not have a motive similar to his motive at trial for cross-examining [the complainant's] testimony concerning the kidnaping and battery. Therefore, [the complainant's] testimony on those issues lacked the circumstantial guarantees of trustworthiness that section 115-10.4 of the Code requires." *Brown*, 374 Ill. App. 3d at 734-35.

¶ 28     In this case, defendant did not have an adequate opportunity or similar motive to cross-examine complainant, because defendant was provided with incorrect serology test results, did not know about the exculpatory DNA tests, and, based on the "offensive use of the rape shield statute," was improperly barred from asking complainant about her prior sexual conduct. *Starks II*, 365 Ill. App. 3d at 600. Complainant was the key witness against defendant. She identified defendant as the man who raped her, ejaculated in her, and did not remove her underwear. She also told the police that she had not had intercourse for two weeks prior to the rape. Defendant did not know during the first trial that he was excluded as the source of the semen, and he was barred from asking complainant whether she had prior sexual intercourse. If she replied that she did not have prior sexual intercourse, that would tend to prove that defendant was not the attacker, because the source of the semen must have been from an attacker who could not have been defendant, as he was excluded as the source of the semen. On the other hand, if she replied that she did have prior sexual intercourse, that would tend to destroy her credibility and would tend to prove defendant's innocence because he was excluded as the source of the semen. Considering these facts, we conclude that the inability of defendant to cross-examine complainant regarding her prior sexual conduct or the exculpatory DNA and serology test results precluded defendant from exposing facts from which the fact finder could have drawn inferences about complainant's reliability and credibility. See *McCambry*, 218 Ill. App. 3d at 1001. Accordingly, defendant was denied adequate cross-examination at the time of the initial proceeding for purposes of section 115-10.4 of the Code and Illinois Rule of Evidence 804(b)(1). See *Brown*, 374 Ill. App. 3d at 734-35. Therefore, the trial court did not abuse its discretion by granting defendant's motion *in limine* barring the admission of complainant's testimony.

¶ 29     The State also argues that the trial court erred by barring complainant's prior testimony, because, during the first trial, defendant had the opportunity to cross-examine complainant on every issue except her prior sexual contacts. This argument ignores the facts that came to

light after defendant was convicted. After defendant was convicted, DNA tests that were not available at the time of trial excluded defendant as the source of the semen that was obtained from complainant's underwear and vagina and attributed to defendant at trial. Further, based on the DNA tests, defendant learned that the State presented incorrect serology evidence; rather than indicating that defendant was a possible source of the semen, the serology test results actually excluded defendant as the source of the semen. Because this evidence was not available to defendant at the time of complainant's testimony, defendant did not have an opportunity to adequately cross-examine her. See *McCambry*, 218 Ill. App. 3d at 1001.

¶ 30    Next, the State argues that defendant will not be prejudiced on retrial as a result of not being able to cross-examine complainant regarding her prior sexual contacts. The State's explanations for defendant's lack of prejudice are numerous and varied. The State argues that defendant has no need to prove that complainant had prior consensual sexual intercourse or that defendant was not the source of the semen. The State explains that its current position is opposite from that which it advanced during the first trial. The State's "current theory is that the genetic material did not come from the defendant *** but rather resulted from [complainant's] prior consensual conduct." The State further contends that the only possible reason to allow defendant to question complainant about her prior sexual contacts would be to establish that defendant was not the source of the semen. The State argues that, because defendant can now demonstrate that he was not the source of the semen, "his ability to attack [complainant's] credibility will be greater on [retrial]."

¶ 31    Defendant was barred from questioning complainant regarding her prior sexual conduct and was unable to question her regarding the exculpatory results of the serology and DNA tests. Thus, defendant was prohibited from engaging in appropriate cross-examination from which the fact finder could evaluate complainant's reliability. Therefore, the lack-of-prejudice argument espoused by the State lacks merit. See *McCambry*, 218 Ill. App. 3d at 1001.

¶ 32    The State also argues that, even if the fact finder rejected complainant's testimony that defendant penetrated her vagina, it could still find defendant guilty of attempted aggravated criminal sexual assault. The State fails to understand that, because defendant did not have the opportunity to effectively and adequately cross-examine complainant regarding the new evidence, her credibility could not be tested regarding these important issues. Complainant's credibility could affect all charges against defendant. Thus, the State's argument has no effect on our holding that the trial court did not abuse its discretion by granting defendant's motion *in limine*.

¶ 33    Finally, we address the State's argument that the trial court's decision was the result of its flawed interpretation of this court's decision in *Starks II*, where we stated:

"The State used the rape shield statute to bar testimony on defendant's behalf despite the combination of the victim's impeachment by her admission she had not been sexually assaulted and the untruthful or incorrect testimony of the State's own expert regarding the serology results. *In effect, the State has improperly turned the rape shield statute on its head and made it a sword to thwart defendant's constitutional rights of confrontation (rather than a shield to protect the victim's past sexual history).* If defendant had been

allowed to present evidence to the jury that the serology evidence excluded him and to present evidence of other possible sperm donors, the result of the trial likely would have been different. We determine that the serology results as they pertained to defendant, the use of incorrect expert testimony, the impeachment of the victim, and the preclusion of a defense by the offensive use of the rape shield statute, resulted in the denial of defendant's constitutional rights so as to be more than an adequate basis to reverse the trial court's dismissal of defendant's postconviction petition for a new trial." (Emphasis added.) *Starks II*, 365 Ill. App. 3d at 600.

¶ 34    In reaching its decision to grant defendant's motion *in limine*, the trial court stated that our opinion is "obviously paramount," quoted the italicized portion of *Starks II*, and commented:

"This clearly tells this trial court that the inquiry barred at the first trial must be permitted at retrial. [Complainant] is no longer able to answer such questions herself, nor is there any reliable way to allow defense to inquire of her to get complete information before the trier of fact."

¶ 35    The trial court also stated:

"[Complainant's] prior trial testimony can be used if and only if the defendant had adequate opportunity to cross-examine her at the time of the testimony sought to be admitted.

* * *

I have carefully considered this issue in accordance with the Constitution's confrontation requirements and exceptions. The former testimony of [complainant] does not meet these requirements in light of the Second District's opinion in this particular case."

Thus, the trial court properly interpreted our prior holding that defendant was denied his constitutional right by the improper use of the rape shield statute.

¶ 36    The State also contends that the trial court should not have considered the language regarding the rape shield statute in *Starks II*, because it is "merely *dicta*." Both *obiter* and judicial *dicta* are "comments in a judicial opinion that are unnecessary to the disposition of the case." *People v. Williams*, 204 Ill. 2d 191, 206 (2003). We listed the "offensive use of the rape shield statute" as one of the bases for our decision to reverse the trial court's dismissal of defendant's petition for a new trial. *Starks II*, 365 Ill. App. 3d at 600. Thus, our language regarding the improper use of the rape shield statute was necessary to the disposition of the case and was not "merely *dicta*."

¶ 37    The State argues, in the alternative, that we should reconsider our analysis of the rape shield statute issue in *Starks II*. The State notes that, in *Starks I*, we held that defendant forfeited his argument that the trial court's application of the rape shield statute denied him the right of confrontation, because he failed to make an offer of proof. See *Starks I*, slip order at 19-20. We remind the State that the facts and issues in *Starks I* were different from those in *Starks II*. In *Starks II* our holding was based, in part, on new exculpatory serology and DNA evidence and the effect that the use of the rape shield statute had on defendant's right of confrontation in light of this new evidence. *Starks II*, 365 Ill. App. 3d at 600. Thus, we

-9-

need not reconsider our holding in *Starks II*. Further, because we affirm based on other grounds, we need not address the constitutional basis for the trial court's decision.

¶ 38                    III. CONCLUSION

¶ 39        The judgment of the circuit court of Lake County is affirmed.

¶ 40        Affirmed.